FORD MOTOR COMPANY, Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

J. WALTER THOMPSON COMPANY,
Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

Nos. 75–1041, 75–1043.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1975.

Decided June 21, 1976.

On Motion for Reconsideration
Dec. 10, 1976.

Robert L. Wald, Philip Elman, Keith S. Watson, Wald, Harkrader & Ross, Thomas C. Mathews, Jr., Washington, D. C., Hugh P. Connell, John Byron Hackett, New York City, for petitioner in No. 75–1041.

Robert L. Wald, Philip Elman, Keith S. Watson, Wald, Harkrader & Ross, Thomas C. Mathews, Jr., Washington, D. C., for petitioner in No. 75–1043.

Calvin J. Collier, Gerald Harwood, Mark W. Haase, Gen. Counsel, Federal Trade Commission, Washington, D. C., for respondent in Nos. 75–1041 and 75–1043.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

These are consolidated petitions filed by the Ford Motor Company and J. Walter Thompson Co., its advertising agency, to review and set aside certain "consent" cease and desist orders entered by the Federal Trade Commission against both concerns. The underlying actions were brought by complaints issued under Section 5(b) of the Federal Trade Commission Act, 15 U.S.C. § 45(b) (1970), involving alleged unfair advertising of Ford Division products. One ad concerned the assertion that Ford Division cars were quieter than a glider in flight (which FTC contends isn't quiet at all). The other ad showed the alleged structural strength of Ford cars to resist lateral impact by having a hoist pick one up by the side rails. (The ability of the side guard rails to sustain the weight of the car does not, in FTC's view, prove much about their resistance to lateral impact.)

Both companies and FTC negotiated a proposed consent order under the FTC Rules then applicable. 16 C.F.R. §§ 2.31–2.-35 (1974).[1] The companies filed the consent orders properly executed by them, and the FTC provisionally accepted the proposed order. The rules also provided for the publication of the consent order for a period of sixty days in which FTC would accept comments, after which time the FTC would make a decision on whether or not finally to accept the consent order.

Ford and J. Walter Thompson assert that they were told during the negotiations by FTC representatives that FTC would not accept consent orders limited narrowly to the claims actually made in the pending complaints. Thereupon the order was drafted and consented to by the companies, applicable to all performance claims for the indefinite future. It is the breadth of the language employed in this regard which triggered this controversy.

Ford and J. Walter Thompson assert that during the sixty-day publication period, they learned that FTC had agreed with General Motors and its advertising agencies to a consent order limiting certain practices complained of in relation to that corporation to the specific practices involved. Ford then wrote the FTC indicating that the reported terms of the General Motors agreement would place Ford at a competitive disadvantage, that the consent order was no longer acceptable to Ford, and asking FTC to recall its provisional acceptance. FTC did not respond substantively to these communications, and on August 13 and 14, 1974, J. Walter Thompson and Ford filed letters of withdrawal of their consent. Thereafter, on October 21, the Secretary of the FTC wrote Ford and J. Walter Thompson that FTC rules don't authorize unilateral withdrawal by a respondent and that

---

1. The rules have since been revised. *See* 40 Fed.Reg. 15235–36 (1975). The revision would not, however, necessarily avoid reoccurrence of the sort of dispute involved in this case.

FTC would not withdraw its provisional acceptance. On November 19, 1974, FTC issued a final order to this effect. Both Ford and Thompson filed motions for reconsideration with FTC which motions were denied, resulting in this litigation.

■ We believe that this court has jurisdiction to hear a dispute between these parties concerning the validity of a "consent" agreement which dispute concededly arose by dint of an attempt to withdraw consent before the agreement became final. *See Swift & Co. v. United States*, 276 U.S. 311, 324, 48 S.Ct. 311, 72 L.Ed. 587 (1928); *Martin Marietta Corp. v. Federal Trade Commission*, 376 F.2d 430, 434 (7th Cir.), *cert. denied*, 389 U.S. 923, 88 S.Ct. 237, 19 L.Ed.2d 265 (1967).

Two other of the issues presented by the parties in this case may be disposed of quickly.

■ First, petitioners Ford and Thompson argue that respondent Federal Trade Commission was required, but failed, to support its consent orders entered in this case by findings of fact and conclusions of law. As we understand both the general nature of a consent order and the specific terms of the FTC rule applicable at the relevant times in this case, 16 C.F.R. §§ 2.31–2.35 (1974), the principal purpose of a consent order is to avoid the fact finding and adjudicatory process which petitioners now seek. Assuming that the consent orders herein were otherwise final and valid, we find no merit to this argument.

■ Second, respondent FTC claims that petitioners' current case should be dismissed because in the proposed consent orders they waived their rights to judicial review. The short answer to this argument is that generally the tail goes with the hide. Petitioners claim that their consent orders were legally withdrawn before they became final and binding. They also claim, in the alternative, that it was an abuse of discretion on the part of the Commission to fail to allow them to withdraw their consent. In either instance, the waivers of judicial review would be withdrawn with the consent orders.

We would phrase and answer the principal issues in this case as follows:

1) Was the Commission's interpretation of its consent order rules consistent with their language and with due process to the extent that they prevented petitioners' attempted unilateral withdrawal of consent?

We answer this question affirmatively.

2) Assuming the affirmative answer above, the remaining issue is: Even if petitioners were not themselves privileged to withdraw their proffered consent orders, did the Commission abuse its discretion by refusing to withdraw its own provisional consent when petitioners sought such action on the grounds that subsequent developments concerning a major competitor showed that petitioners were being placed at an unfair competitive disadvantage by the consent orders?

We answer this question in the negative.

### THE CONSENT ORDER RULE

Petitioners contend that:

[T]he Commission's Rules placed no limitation on a respondent's right to withdraw consent before final action by the Commission and the Commission had never previously announced any interpretation of its Rules to preclude such withdrawal.

Respondent FTC in turn contends that the Commission's interpretation of its own rules is entitled to great deference and it interprets Rules 2.31–2.35 as not permitting unilateral withdrawal by petitioners. In this regard it analogizes the tender of the consent order to a stipulation of fact tendered to a court of law. It also emphasizes that Rule 2.34(b) by its terms allows the Commission to withdraw its "provisional consent," but does not provide any such right to petitioners. It therefore argues that the Latin maxim *expressio unius est exclusio alterius* (The mention of one implies the exclusion of others) applies to this case.

We consider the stipulation analogy and the cases illustrating it to be inapposite.

The admission of facts and the consent to an order are neither identical nor even closely comparable. But certain provisions of the rules themselves are persuasive that Ford was intended to be bound.[2] These provisions call for 1) provisional acceptance by the Commission, 2) publication of the consent agreement with an invitation for public comment thereon for a period of sixty days, and 3) a one month period after receipt of public comment for the Commission to withdraw consent or to make its provisional acceptance final. As we see these separate provisions, they provide a final review of the proposed order after public scrutiny, with the Commission having the final right in the public interest to escape from the consequences of the provisional consent if public comment provides objections which were not previously considered. The Commission thus has reason to withhold its final approval and it likewise has reason not to extend that same right to withdraw to the party proposing the consent. The time limitations are reasonable ones. The party proposing the consent order is not left unilaterally committed for an indefinite period.

We conclude that the Commission's interpretation of its rules as prohibiting Ford and Thompson from unilateral withdrawal of their proposed consent orders is consistent with the language of the rule, does not offend due process, and should be accepted by this court. In this regard we recognize the deference due the Commission's interpretation of its own rules as frequently declared by the United States Supreme Court. *Udall v. Tallman,* 380 U.S.

1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

## THE COMPETITIVE DISADVANTAGE ISSUE

As to petitioners' claim of abuse of discretion, the position of the parties is fully stated by the following excerpts from the first of several Ford letters concerning this issue and from the single responsive letter from the Commission.

*Ford's (and presumably Thompson's) Position*

The Commission's Inconsistent Treatment of Ford and General Motors

While the Commission was investigating and negotiating with Ford concerning its "Lift" and "Glider" commercial, it was also investigating and subsequently litigating with General Motors the legality of Vega and Opel commercials in Docket No. 8907. Although the charges against General Motors were, in our view, more serious than those against Ford,* Ford

* The Commission in the Ford Complaint charged that certain advertising demonstrations did not prove the qualities of "strength" and "quietness" allegedly represented in the advertisements, but the Commission at no time challenged the truthfulness of the basic product claims themselves; the Commission in the General Motors Complaint, in contrast, challenged as untruthful the basic product claims made in the ads.

believed that because of the strenuous competition between these two leading manufacturers, the Commission would consider the two matters in parity and

2. (b) Upon receiving such an agreement, the Commission may: (1) Accept it; (2) reject it and issue its complaint and set the matter down for adjudication in regular course; or (3) take such other action as it may deem appropriate. If an agreement is accepted, the Commission will place the order contained therein on the public record, and at the same time, will make available an explanation of the provisions of the order and the relief to be obtained thereby and any other information which it deems helpful in assisting interested persons to understand the terms of the order. For a period of sixty (60) days after placement of the order on the public record and issuance of the statement, the Commission will receive and consider any comments or views concerning the order that may be filed by any interested persons. Thereafter, within thirty (30) days, the Commission may either withdraw its acceptance of the agreement and so notify the other party, in which event it will take such other action as it may consider appropriate, or issue and serve its complaint (in such form as the circumstances may require), and decision in disposition of the proceeding. 16 C.F.R. 2.34(b) (1974).

apply equivalent and nondiscriminatory regulatory standards to both. This, historically, has been the Commission's pattern. Thus, in entering into consent negotiations in an effort to avoid prolonged and wasteful litigation, Ford justifiably expected that the ultimate disposition of the *General Motors* case would not place Ford at an unfair competitive disadvantage.

In entering into consent negotiations, Ford was advised by the Commission staff that, while the advertising challenged dealt only with claims of "quietness" and "structural strength," any Order to be acceptable to the Commission must, as a matter of policy, cover "performance" claims as well. Recognizing that cease and desist orders have traditionally been broader in scope than the particular practice challenged, Ford was willing to consider such an Order. At no time did it occur to Ford, or indeed appear plausible, that the Commission would consider applying a different standard in the *General Motors* case, in contravention of such policy.

It has now come to Ford's attention, through trade reports, that General Motors may have entered into a consent agreement with the staff in settlement of its case which contains an order limited to the claims challenged in its complaint (comparative "handling" claims) and fails to include the broad coverage of "performance" claims contained in the provisional Ford Order. This would be a far less stringent standard than applied in the *Ford* case and, if allowed to stand, would place Ford at such a competitive disadvantage as to make the Ford Order unacceptable.

We do not know with certainty that such an agreement has been reached in the *General Motors* case. None is contained in the public record, but the Commission's public record does show an order of the Administrative Law Judge, dated May 3, 1974, containing a recitation that, on May 2, 1974, "it was indicated that a proposed consent settlement had been reached between complaint counsel

and respondent General Motors . . . ." Reports in the industry appear to confirm that an agreement has been reached.

So fundamental a difference in the compliance obligations which Ford and General Motors would carry under these Orders—particularly since the greater burden on Ford bears no relationship to the severity of the charges involved— would constitute an intolerable intrusion by the Commission into competition between the two companies. While this difference may result from the fact that the agreements were apparently negotiated by separate components of the Bureau of Consumer Protection, it cannot be justified on that basis. The Commission's obligation to protect the public interest carries with it a concomitant responsibility to regulate similarly situated competitors in the same industry in a fair, equal and evenhanded manner.

Ford has already suffered damaging publicity as a result of the unfortunate circumstances described above. To avoid further damage and to remain competitive, we must now ask that the Commission take action to assure that equivalent "fencing-in" of the two companies will result from entering these Orders. We, therefore, request, in light of the substantially narrower Order reportedly agreed upon in General Motors, that the Commission now recall the provisional Ford Order and similarly reduce its coverage to the claims actually challenged in the Ford Complaint, i. e., structural strength and quietness, eliminating the reference to broad general "performance" claims which now seems wholly inappropriate.

We urgently request the Commission's prompt consideration of this matter. Since the 60-day period during which the provisional Ford Order remains on the public record will expire on August 15, we ask for a reply sufficiently in advance of that date so Ford may determine what further action, if any, may be necessary in order to protect the Company's interests.

## The Commission's Reply

This is in response to your letters of July 12, August 8, and August 14, 1974, which the Secretary acknowledged by letter of August 19, 1974.

With respect to the purported withdrawal by Ford Motor Company from the Agreement Containing Consent Order to Cease and Desist, dated December 14, 1973, in File No. 722 3122, you are advised that the Commission's Rules of Practice to not authorize unilateral withdrawal by a respondent from an agreement accepted by the Commission pursuant to Subpart C thereof (Sections 2.31 through 2.35, inclusive). The Commission has, however, reviewed the facts and considerations set forth in your letters as argument in support of a request that the Commission withdraw its acceptance of the Agreement. The Commission finds that the public interest would not be served by such action.

The Commission's brief filed in this appeal adds little to the modicum of information provided above. It complains about the lack of specificity in the petitioners' allegations concerning the General Motors consent order (which petitioners, as of the July 12, 1974, date, could not have seen). It also argues:

> Besides, while the GM consent order is less restrictive than the Ford consent order in one respect, the GM order is substantially *broader* in coverage. The advertising ban in the Ford order applies only to *some* vehicles, while the GM order applies to *all vehicles.* (J.A. 17, Pet. Br. A–15). Understandably, Ford does not complain about *this* aspect of its consent order.

Basically, however, the Commission simply refused to comment on, talk about, or give evidence of any serious consideration to petitioners' claims of competitive disadvantage arising after petitioners had filed their consent orders because of the assertedly more favorable treatment of Ford's prime competitor, General Motors.

While we have previously upheld the Commission's contention that petitioners had no absolute right to withdraw their consent orders, petitioners also timely sought the Commission's own withdrawal of its "provisional" consent. *See generally Sunshine Art Studios, Inc.,* FTC File No. 682 3221. This action was clearly within the Commission's powers as defined by its own rules. The Commission's refusal to withdraw its consent is reviewable by this court for abuse of its discretion under Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1970). *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The General Motors order referred to by petitioners is now, of course, a matter of public record. The differences in treatment are real ones:

## The Ford Order

IT IS ORDERED that respondent, Ford Motor Company, its successors and assigns, its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale or distribution, in commerce as "commerce" is defined in the Federal Trade Commission Act, of the Ford LTD automobile, the Ford Galaxie automobile or any other motor vehicle marketed by the Ford Division, do forthwith cease and desist from:

(a) Unfairly or deceptively advertising any such product by presenting evidence, including tests, experiments, or demonstrations, or the results thereof, that appears or purports to be evidence of the structural strength, quietness or performance of such product, that is material to inducing the sale of such product, but which is not competent or reliable evidence to prove such fact or product feature.

(b) Making any statements or representations directly or by implication, concerning the structural strength, quietness or performance of the said products or any part thereof, unless there exists a reasonable basis for such statements or representations; provided

that such a reasonable basis shall consist of competent and reliable scientific tests or other competent and reliable objective materials, including competent and reliable opinions of scientific, engineering or other experts who are qualified by professional training and experience to render competent judgments in such matters.

### The General Motors Order

I. IT IS ORDERED that respondent General Motors Corporation, a corporation, its successors and assigns, and its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale or distribution of any automobile, in commerce, as "commerce" is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

1. Representing directly or by implication, in any manner, including the use of any endorsement, testimonial or statement made by any individual, group or organization, that any automobile is superior in handling to any other automobile or all other automobiles, unless at the time that any such representation is first disseminated:

(a) respondent has a reasonable basis for such representation, which shall consist of a competent scientific test or tests that substantiate such representation; and

(b) respondent's agents, employees or representatives who are responsible for engineering approval of any advertisement containing such representation rely on such test or tests in approving such advertisement and provide to respondent's agents, employees or representatives who are responsible for approval of such advertisement a written statement that such test or tests exist which substantiate the representation.

Thus Ford, under the disputed consent order, would be subject to a direct Commission order to cease and desist from not just the structural strength and quietness claims (which triggered this complaint), but from *all performance claims* which may be deemed based on false or deceptive advertising.

General Motors, on the other hand, is under no such broad continuing restrictions. Its order is limited to the subject of the complaint against it, namely, superiority in handling.

The majority of this court (Judge McCree dissenting) initially saw these facts as stating a claim of discriminatory treatment which warranted remand to the Commission for hearing. A slip opinion issued with such a disposition on this question.

On motion for rehearing the FTC, for the first time, cited to this court another order which it had entered against General Motors Corporation. This order, entitled "In the Matter of the General Motors Corporation, Docket No. C–2564," was entered on October 7, 1974, the day before the orders against petitioners Ford and Thompson which are the subject of these petitions. The terms of this General Motors order follow:

IT IS ORDERED that respondent General Motors Corporation and its officers, agents, representatives, and employees, directly or through any corporation, subsidiary, division or other device, in connection with the advertising, offering for sale, sale or distribution of automobiles, in commerce as "commerce" is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

1. Representing, directly or by implication, by reference to a test or tests, that any of respondent's automobiles is superior with regard to fuel economy to any other automobiles, whether manufactured by respondent or others, unless:

(a) such superiority has been demonstrated, as to the model(s) for which it is claimed, by such test or tests with respect to each sample, or the valid average of all identical

samples, of each model represented to have been tested; or

(b) the valid test results for each sample, or the valid average of all identical samples, of each model so compared, including the advertised model as well as such makes and models to which the advertised model is compared, are clearly and conspicuously disclosed.

For the purpose of this order "sample" shall mean an actual automobile tested. It is provided, however, that nothing contained in this paragraph is intended to conflict with any guidelines, rules or regulations with respect to fuel economy testing or advertising that may hereafter from time to time be promulgated by any agency of the United States Government, and, if such conflict does occur, the guidelines, rules or regulations shall govern.

2. Misrepresenting in any manner the fuel economy of any automobiles or the superiority of any automobile over competing products in terms of fuel economy.

3. Representing, directly or by implication, by reference to a test or tests, that the performance of any automobile has been tested either alone or in comparison with other automobiles unless such representation(s) accurately reflect the test results and unless the tests themselves are so devised and conducted as to substantiate each such representation concerning the featured tests.

4. Misrepresenting in any manner the purpose, contents or conclusion of any test, report or study, relating to the performance of its automobile.

For purposes of paragraphs 3 and 4 of this order, "test" shall include demonstrations which are claimed to be proof of the representations made.

5. Disparaging the quality or properties of any competing product or products through the use of false or misleading comparisons relative to fuel economy.

6. Placing in the hands of dealers for any of the products of the company an advertisement which contains any of the representations prohibited by paragraphs 1–5 above.

IT IS FURTHER ORDERED that the respondent corporation shall forthwith distribute a copy of this order to each of its operating divisions.

IT IS FURTHER ORDERED that respondent notify the Commission at least Thirty (30) days prior to any proposed change in the corporate respondent such as dissolution, assignment or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries or any other change in the corporation which may affect compliance obligations arising out of the order.

IT IS FURTHER ORDERED that the respondent herein shall within sixty (60) days after service upon them of this order file with the Commission a report, in writing, setting forth in detail the manner and form in which they have complied with this order.

■ This order was applicable to all General Motors cars. It contained a broad prohibition concerning performance claims similar to that about which the Ford petition to this court complained. Beyond doubt, if the Commission had furnished a citation to this order in its brief or argument to this court, no remand order would have ever been issued. We note and accept the Commission's apologies for omission of an essential portion of the available records of the Commission as to the competitive disadvantage claim.

Therefore as to the second principal issue in this case (*i. e.* Ford's and Thompson's competitive disadvantage claims), we find no abuse of the Commission's discretion and the orders complained of in these petitions are affirmed.