**CHRYSLER CORPORATION, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 76–1586.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1977.

Decided July 6, 1977.

Rehearing Denied July 25, 1977.

Lee Loevinger, Washington, D.C., with whom James H. Sneed and Weldon H. Latham, Washington, D.C., were on the brief, for petitioner.

William A. Horne, Atty., F.T.C., Washington, D.C., with whom Gerald P. Norton, Deputy Gen. Counsel and Jerold D. Cummins, Acting Asst. Gen. Counsel, F.T.C., Washington, D.C., were on the brief, for respondent.

Before McGOWAN, MacKINNON and ROBB, Circuit Judges.

McGOWAN, Circuit Judge.

This is a petition for review of a Federal Trade Commission order requiring petitioner, the Chrysler Corporation, to cease and desist from false and deceptive advertising. The order is based on a finding that Chrysler violated § 5 of the Federal Trade Com-

mission Act, 15 U.S.C. § 45, by misrepresenting fuel economy test results in advertising its Plymouth Valiant and Dodge Dart automobiles. This finding is challenged, first, because evidence was admitted by the Commission after oral argument of the case, a procedure allegedly contrary to due process; and second, on the ground that the Commission's conclusion is not supported by substantial evidence in the record. In addition, petitioner asserts that, even if the finding of a violation was justified, the scope of the cease and desist order is overly broad, both by comparison with an allegedly similar order entered against one of its competitors, and as measured against the general purposes of the governing statute.

For the reasons set forth below, we sustain the Commission's finding that Chrysler engaged in misleading advertising, but modify the order to reflect the limited nature of the violation found.

I

The advertisements at issue here were part of a sales campaign by Chrysler during the "energy crisis" of 1973–74, promoting its compact cars through comparisons with the subcompact and compact cars produced by its competitors. The first advertisement in dispute, the third in a series of full-page newspaper ads published in various cities throughout the country, was entitled "THE SMALL CAR VS. THE SMALL CAR." The text under this caption stated in pertinent part:

> You can buy a Chevrolet Nova OR you can buy a small car that can beat it on gas mileage. **
>
> .   .   .   .   .
>
> The answer is a small car at your Chrysler-Plymouth and Dodge Dealer's.
>
> .   .   .   .   .
>
> See all the Darts at your Dodge/Dodge Trucks Dealer.
> See the Dusters and Valiants at your Chrysler-Plymouth Dealer.

Pictured in the advertisement were a Dodge Dart Swinger Special and a Plymouth Duster. The asterisks in text were keyed to the following footnote:

> Gas mileage figures based on October 1973 *Popular Science* magazine. Tests performed by *Popular Science* for its report were conducted on '73 vehicles with figures adjusted by *Popular Science* for 1974 model changes and the results of E.P.A. tests.

The second controverted advertisement, published in March 1974 in *Reader's Digest,* included the following colloquy:

> Which small cars . . . can go farther on a gallon of gas than Nova? These small cars from Chrysler Corporation are the answer.

Beneath the latter statement, a Dodge Dart Sport and a Plymouth Duster were depicted. The text of the ad continued as follows:

> *Small cars are not created equal*
>
> Compare these small cars from Chrysler Corporation with any small car you may be considering. They not only give you the handling and economy of a small car, but a lot of the things you'd expect only in a big car. . . .
>
> So, find out for yourself why the small cars from Chrysler Corporation are outselling all other compact cars.*
>
> See all the Darts at your Dodge/Dodge Trucks Dealer.
> See the Dusters and Valiants at your Chrysler-Plymouth dealer.

The asterisk in text was tied to the following footnote, virtually identical to the one in the first disputed advertisement:

> Gas mileage claim based on October 1973 *Popular Science* magazine. Tests performed by *Popular Science* for its report were conducted on '73 vehicles. Figures were adjusted by *Popular Science* to reflect 1974 model changes and the results of E.P.A. tests.

The *Popular Science* tests referred to in these two ads in fact showed that the Plymouth Valiant and Dodge Dart automobiles equipped with six-cylinder engines obtained better gas mileage than Chevrolet Novas equipped with either a six-cylinder or a V8

engine. However, the tests also showed that Valiants and Darts equipped with V8 engines got poorer gas mileage than Novas equipped with comparable V8 engines, and Novas equipped with six-cylinder engines.

On October 9, 1974, respondent Commission issued a complaint against Chrysler, charging that the two advertisements were deceptive and unfair in their representations of the *Popular Science* tests results. The matter was tried before an Administrative Law Judge on April 29, 1975. FTC counsel introduced into evidence copies of the disputed advertisements, and two stipulations of facts which included, *inter alia,* statistics showing that approximately one-fourth of the Plymouth Valiants and one-third of the Dodge Darts sold during the 1973 model year and the first portion of the 1974 model year were equipped with V8 engines.

In response, Chrysler called five witnesses—including the Chrysler executives in charge of the advertising campaign and the advertising agency executives who prepared the two ads in question—each of whom testified that all of the ads in the small car campaign, including the challenged ads, were meant only to cover automobiles with six-cylinder engines, and not those with V8 engines. Petitioner also introduced into evidence copies of the other twelve advertisements in the campaign, each of which explicitly mentioned Chrysler's "Slant-Six" (six-cylinder) engine in connection with the fuel economy claims made therein. Finally, petitioner submitted several exhibits, including Product Information Bulletins on its compact cars and the results of a study relating to consumer perception of the term "small car."

On September 4, 1975, the ALJ issued his decision. His conclusion was that the two ads in question conveyed the representation that *Popular Science* magazine had reported all Chrysler small cars to be superior in gasoline mileage to all Chevrolet Novas, and to all Novas equipped with comparable engines; that the ads had the capacity and tendency to deceive prospective customers into believing Chrysler's misrepresentations

as to the *Popular Science* tests results; and that such misrepresentations constituted unfair methods of competition and unfair and deceptive acts in violation of section 5 of the Federal Trade Commission Act. The ALJ also found that Chrysler's failure to disclose that the *Popular Science* tests had shown that Valiants and Darts with V8 engines obtained inferior gas mileage to Novas equipped with six-cylinder and comparable V8 engines was an omission of a material fact, and constituted an unfair trade practice in violation of section 5.

Chrysler appealed this decision to the Commission, and oral argument was held on January 16, 1976. Chrysler's principal contention was that the term "small car" in the disputed ads was intended to refer only to compacts equipped with six-cylinder engines; consumers would not perceive that term as referring to compacts with V8 engines; and, consequently, the ads did not convey a false impression of the *Popular Science* test results.

Following oral argument, but prior to decision, FTC complaint counsel moved, pursuant to sections 3.71 and 3.72 of the Commission's Rules of Practice and Procedure, 16 C.F.R. §§ 3.71–.72, to reopen the proceeding for the limited purpose of filing "new documentary evidence," which was attached to the motion. This evidence was submitted to show that Chrysler's own promotional materials had referred to an automobile sold exclusively with a V8 engine— the Plymouth "Road Runner"—as a "small car." The proffered materials included two versions of a television commercial which was broadcast on December 20, 1975, and came into complaint counsel's hands only after oral argument before the Commissioners; two letters from an in-house attorney for Chrysler, confirming that these ads had been broadcast, and that the Road-Runner was available only with a V8 engine (a fact that complaint counsel apparently was not aware of until some time after he received the copies of the commercial); and a catalogue used by Chrysler as point-of-purchase advertising, describing Plymouth Volare as its "new small car" and stating that the

Road Runner is a type of Volare, as well as making a "small car economy" claim next to a picture of a Road Runner.

Chrysler opposed this motion on the ground that the record could not be reopened without a remand of the entire proceeding to the ALJ. Its memorandum of opposition generally denied the "authenticity of some of the material and the relevance of all of it," and stated that if complaint counsel were to be allowed to submit this additional evidence, Chrysler should be allowed to introduce further evidence as to the meaning of the advertisements challenged in the complaint. FTC counsel responded to Chrysler's attack on the authenticity of the new documents by submitting an additional copy of the audio portion of the Road Runner TV commercial, a copy which had been attached by Chrysler's in-house attorney to a letter sent to FTC counsel concerning the commercial.

On April 13, 1976, the Commission issued an opinion unanimously upholding the decision of the ALJ. The opinion relied primarily on an examination of the disputed ad-

vertisements themselves to support its findings that the ads were misleading and omitted material facts.[1] In addition, in rejecting Chrysler's defense that the ads referred only to automobiles equipped with six-cylinder engines, the Commission stated that "[t]he record in this matter reveals that the public's understanding of the term 'small car' may be much more flexible than [Chrysler] suggests in its arguments on appeal . . . ." The opinion discussed at some length the study submitted by Chrysler to show that consumers perceived "small cars" as those with six-cylinder engines and smaller, but concluded that the study was not inconsistent with the Commission's finding that "[a] substantial portion of the consuming public could reasonably perceive Chrysler's compact cars with V8 engines simply as small cars with big engines or high-powered small cars."

Finally, in a footnote at the very end of the section of the opinion discussing Chrysler's defense, the Commission admitted into evidence, as relevant to the issue of Chrys-

1. The opinion states in relevant part:

The Commission has carefully examined the record evidence and finds that the ads in question do indeed have a tendency and capacity to mislead consumers into a mistaken belief about the content of the *Popular Science* article and about the comparative gas economy of all Chrysler small cars and all Novas and all such vehicles equipped with comparable-sized engines. The ads refer broadly to Chrysler "small cars" and invite consumers to see "all the Darts" and "the Dusters and Valiants," without any stated references to the cars' engines. It would not be readily apparent to consumers from any *information* the ads contain that the mileage claims were limited to small cars with six-cylinder engines; nor are the references to *Popular Science* qualified in any way which would assist consumers to understand that the magazine's support for Chrysler's fuel-economy claim was confined to six-cylinder cars. Thus, viewed in their entirety, we believe the ads could reasonably lead consumers to believe that the mileage claims referred to six- and eight-cylinder cars and to vehicles equipped with comparable-sized engines. The ads, therefore, have a tendency and capacity to deceive consumers into the mistaken belief that *Popular Science* found Chrysler's small cars superior to the Novas in situations in which the magazine had actu-

ally reported that the Novas were the more fuel-efficient vehicles.

The Commission also finds that Chrysler's failure to disclose that the *Popular Science* report supported its mileage claim only in respect to its six-cylinder engines or in the alternative, to disclose the report's findings in respect to the eight-cylinder engines constituted an omission of material fact. The way the *Popular Science* magazine reference was used in the context of these advertisements was designed to disarm skeptical consumers who might question the reliability of Chrysler's fuel-economy claims. It was not, after all, just Chrysler's word that the consumer had to believe. The ads conveyed the impression to consumers that a presumably objective third party with no interest in selling respondent's automobiles had tests which proved, without qualification, that all Chrysler small cars had better gas mileage than all Chevrolet Novas. This impression was misleading and deceptive and, accordingly, we find that Chrysler's failure to disclose findings in the *Popular Science* report which were unfavorable to its eight-cylinder cars, in the context of advertisements not expressly limited to its six-cylinder cars, constituted an omission of material fact and misuse of the *Popular Science* report in violation of Section 5 of the Federal Trade Commission Act. J.A. 465–68 (footnotes omitted).

ler's use of the term "small car" in advertising for automobiles with V8 engines, the copy of the Road Runner commercial which Chrysler's in-house attorney had provided, the letters from that attorney to FTC counsel, and the point-of-purchase advertising promoting Road Runner as a "small car." In admitting this evidence, the Commission noted that the commercial was not available at the time of the trial before the ALJ, and that FTC counsel had acted with due diligence under the circumstances. Chrysler's "vague objections" concerning the authenticity of "some of the material" were rejected in view of the Chrysler attorney's correspondence, and the fact that the copy of the commercial received by the Commission was provided by that attorney himself.

A broad cease and desist order was entered on the basis of the Commission's opinion. The relevant portion of that order is set out in the margin.[2]

## II

### A

■ Petitioner contends that admission of the Road Runner materials subsequent to argument before the Commission was contrary to respondent's own regulations and deprived petitioner of its right to a hearing, and thus constituted a two-fold violation of due process requiring that the Commission's findings be set aside. It is clear, however, that under both the Administrative Procedure Act and respondent's regulations, the Commission may exercise, on appeal from an initial decision by an administrative law judge, all powers which it would possess if it made the initial decision itself. 5 U.S.C. § 557(b); 16 C.F.R. § 3.54(a); see K. Davis, Administrative Law Text § 10.04 (1972). See also Cinderella Career and Finishing Schools, Inc. v. FTC, 138 U.S.App.D.C. 152, 425 F.2d 583, 588 (1970). These powers obviously include some authority to receive supplemental evidence. The question accordingly becomes whether the manner in which the evidence was received in this case fatally undermined the fairness of the proceedings before the Commission.

■ We believe that, under the circumstances presented here, any error in the somewhat unusual procedure followed by the Commission was not prejudicial to petitioner, and consequently does not warrant reversal. 5 U.S.C. § 706 (rule of prejudicial error); see Surprise Brassiere Co. v. FTC, 406 F.2d 711, 714 (5th Cir. 1969). Only documentary evidence produced by the petitioner itself was admitted; this evidence was unavailable at the time of trial; and

2. IT IS ORDERED that respondent Chrysler Corporation and its officers, representatives, and agents and employees, directly or through any corporate or other device, in connection with the advertising, offering for sale, sale or distribution of products sold by the respondent in or affecting commerce, as "commerce" is defined in the Federal Trade Commission Act, do forthwith cease and desist from:

1. Representing, directly or by implication, by reference to a test or tests, that any of respondent's automobiles are superior with regard to fuel economy to any other automobiles whether manufactured by respondent or others unless:
a. such superiority has been demonstrated as to the model(s) for which it is claimed by such test or tests with respect to each sample, or the valid average of all identical samples, of each model represented to have been tested; or
b. the valid test results for each sample, or the valid average of all identical samples, of each model so compared, including the advertised model as well as such makes and models to which the advertised model is compared, are clearly and conspicuously disclosed.
For the purpose of this Order, "sample" shall mean an actual automobile tested.
2. Representing, directly or by implication, that any performance or other characteristic of any automobile or automotive product has been tested, either alone or in comparison with other products, unless such representation(s) fully and accurately reflect the test results and unless the tests themselves are so devised and conducted as to completely substantiate each representation concerning any characteristic tested in the featured test.
3. Misrepresenting in any manner, directly or by implication, the purpose, content, or conclusion of any test, report, study, research, demonstration, or analysis.
4. Misrepresenting in any manner the fuel economy of any automobile or the superiority of any automobile over competing products in terms of fuel economy.
J.A. 458–59.

the Commission found that FTC counsel had acted with due diligence in bringing the material to the Commission's attention. The Commission was not required to allow Chrysler to introduce additional evidence on the advertisements challenged in the complaint, as a *quid pro quo* for the receipt of evidence that Chrysler had used the term "small car" in connection with other advertisements for cars equipped with V8 engines. Moreover, whatever light additional proceedings might have shed on the meaning of the Road Runner TV commercial, it appears indisputable that the point-of-purchase advertising simultaneously admitted into evidence promotes Road Runner as a "small car." [3] Finally, the structure of the Commission's opinion strongly suggests that its conclusions were reached independent of the supplemental evidence.

B

■ Petitioner's contention that substantial evidence is lacking for the Commission's findings must also be rejected. Although the case made out by complaint counsel was somewhat thin, we believe that the Commission was entitled to conclude from the advertisements themselves and the stipulations of fact that the ads had a tendency and capacity to mislead consumers as to the *Popular Science* test results. *See, e. g., ITT Continental Baking Co. v. FTC*, 532 F.2d 207, 210 (2d Cir. 1976); *J. B. Williams Co. v. FTC*, 381 F.2d 884, 889–90 (6th Cir. 1967); *Montgomery Ward & Co. v. FTC*, 379 F.2d 666, 670 (7th Cir. 1967); *Carter Products, Inc. v. FTC*, 323 F.2d 523, 528 (5th Cir. 1963). As the Commission noted, "[t]he ads refer broadly to Chrysler 'small cars' and invite customers to see 'all

the Darts' and 'the Dusters and Valiants,' without any stated references to the cars' engines." *See* note 1 *supra*. And, as the Commission also observed, "[i]t is a well settled principle that advertisements may be deceptive if they have a tendency and capacity to convey misleading impressions to consumers even though other nonmisleading interpretations may also be possible." J.A. 472 n.36, *citing Merck & Co.*, 69 FTC 525, *aff'd sub nom. Doherty, Clifford, Steers & Shenfield, Inc. v. FTC*, 392 F.2d 921 (6th Cir. 1968); *Continental Wax Corp. v. FTC*, 330 F.2d 475 (2d Cir. 1964); *Murray Space Shoe Corp. v. FTC*, 304 F.2d 270 (2d Cir. 1962).

■ The Commission was within its factfinding discretion in concluding that Chrysler's evidence did not establish that the advertisements could reasonably be interpreted only to refer to automobiles with six-cylinder engines. The consumer study submitted by Chrysler shows, at best, that some consumers may consider one aspect of a "small car" to be an engine of six cylinders or fewer; it does not refute the notion that many consumers might perceive the term "small car" to include compacts equipped with V8 engines.[4] While relevant to the proper scope of the remedial order, *see* Part III *infra*, the undisputed evidence to the effect that Chrysler did not intend the ads to cover automobiles with V8 engines, and that the other ads in the campaign contained express references limiting the fuel economy claims to "Slant-Six" engines, does not wholly undermine the Commission's finding that the two ads in question conveyed a misleading impression to consumers.[5]

---

**3.** At least one of the Product Information Bulletins introduced into evidence by Chrysler before the ALJ appears to promote Darts and Valiants equipped with V8 engines as "small cars." *See* Initial Decision of the ALJ, J.A. 395 n.7; J.A. 126–29.

**4.** Indeed, the Commission noted in its opinion that the record suggests that the consumers who participated in the Chrysler study "tended to think of a small car as an amalgamation of features including the vehicle's length, its price, cost of maintenance, optional equipment,

weight, and the size of its engine, among others." J.A. 471 n.35.

**5.** An advertiser's good faith does not immunize it from responsibility for its misrepresentations; intent to deceive is not a required element for a section 5 violation. *See, e. g., Doherty, Clifford, Steers & Shenfield, Inc. v. FTC, supra*, 392 F.2d at 925; *Montgomery Ward & Co. v. FTC, supra*, 379 F.2d at 670.

Petitioner urges that a "minor" ambiguity in two out of a campaign of fourteen advertise-

## III

■ Citing *Diener's, Inc. v. FTC*, 161 U.S.App.D.C. 213, 494 F.2d 1132 (1974), and *Ford Motor Co. v. FTC*, 547 F.2d 954, 957–61 (6th Cir. 1976), *cert. denied*, 431 U.S. 915, 97 S.Ct. 2176, 53 L.Ed.2d 225 (1977),[6] petitioner argues that the order under review here must be modified to prevent it from being placed at a competitive disadvantage *vis-a-vis* General Motors, against whom respondent entered a consent order which petitioner alleges is less stringent than the order here, and yet based on more egregious fuel economy misrepresentations. We need not reach this question since we believe that, regardless of the scope of any orders entered against General Motors, the breadth of the order in this case is not justified by the remedial purposes underlying section 5.[7]

The principles governing modification of FTC orders on review are well-established. As the Second Circuit stated recently in *ITT Continental Baking Co. v. FTC, supra*, 532 F.2d at 220–21,

> "[T]he Commission has a wide discretion in its choice of a remedy to 'cope with the unlawful practices' disclosed by the record," *Fedders Corp. v. FTC*, 529 F.2d 1398, 1401 (2d Cir. 1976), quoting *FTC v. Mandel Bros. Inc.*, 359 U.S. 385, 392, 79 S.Ct. 818, 824, 3 L.Ed.2d 893, 898 (1959), and . . . "[s]o long as the remedial order is reasonably related to the unlawful practices found to exist the Commission's order should be upheld." *Fedders, supra*, at 1402. The courts may narrow

FTC orders, however, by deleting those portions for which a reasonable relationship to the offending conduct is lacking. *Id.*

Applying these principles to the case at hand, we find that paragraphs 2 and 3 of the cease and desist order entered against petitioner, *see* note 2 *supra*, lack a reasonable relationship to the violations found to exist, and therefore must be deleted. Paragraph 3, prohibiting petitioners from "[m]isrepresenting in any manner, directly or by implication, the purpose, content, or conclusion of any test, report, study, research, demonstration, or analysis," is "potentially limitless," *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 380, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965); and the scope of paragraph 2, extending to direct or indirect representations of test results concerning "any performance or other characteristic," is almost equally wide-ranging. Given respondent's concession that the violations were unintentional, are not continuing, and were confined to two out of a campaign of fourteen advertisements, we fail to see any rational justification for these sweeping prohibitions. *See, e. g., Country Tweeds, Inc. v. FTC*, 326 F.2d 144, 148–49 (2d Cir. 1964); *Grand Union Co. v. FTC*, 300 F.2d 92, 100 (2d Cir. 1962). Under these circumstances, paragraphs 1 and 4—barring misleading fuel economy claims and false or deceptive representations of test results with respect to fuel economy—provide ample limits on petitioner's conduct.

---

ments was not sufficient to invest the complaint or order in this proceeding with the "public interest" component required for actions taken under section 5. *See FTC v. Klesner*, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138 (1929). However, given that the two ads related to what is, in the American credo, one of the most sacred of consumer goods, and were distributed on a nation-wide basis at a time when fuel economy was of vital concern, there can be no doubt that preventing further deception of consumers with regard to fuel economy was in the public interest.

**6.** In its brief, petitioner cites the *Ford Motor Co.* decision as it stood prior to reconsideration, *Ford Motor Co. v. FTC*, 547 F.2d 954 (6th Cir., 1976). The initial decision was modified

on reconsideration; the result was changed but the legal analysis relied upon by petitioner appears to remain intact, albeit in dictum. *See Ford Motor Co. v. FTC, supra*, 547 F.2d at 960.

**7.** *See, e. g., FTC v. Ruberoid Co.*, 343 U.S. 470, 473, 72 S.Ct. 800, 96 L.Ed. 1081 (1952).

At argument, counsel for respondent asserted that Chrysler did not present to the Commission the claim that the cease and desist order was too broad, and that consequently the issue is not properly before us. We disagree. Whatever the precise form of Chrysler's position below, the Commission clearly reached and considered the issue of whether the scope of the order was justified by the violations attributed to Chrysler. *See* J.A. 477–78.

The order entered by respondent, with paragraphs 2 and 3 deleted, is affirmed; and its enforcement, as modified, is granted.

*It is so ordered.*