**Michael A. LEBRON, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. 84–78.**

United States District Court, District of Columbia.

March 21, 1984.

Donald Weightman, Washington, D.C., for plaintiff.

John Swanson, Washington, D.C., for defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

Michael A. Lebron brought this action seeking declaratory and injunctive relief and damages against the Washington Metropolitan Area Transit Authority (WMATA). WMATA initially accepted, but later rejected, a political advertisement or poster which Mr. Lebron wishes to display in eight of WMATA's subway stations. (Plaintiff's Ex. 1.) This Court has jurisdiction of the complaint pursuant to 28 U.S.C. §§ 1331 and 1343 (Supp. III 1979) as Mr. Lebron alleges that the actions of WMATA violate his rights under the First and Fourteenth Amendments and under 42 U.S.C. § 1983 (Supp. III 1979). Mr. Lebron's common-law claims of breach of contract and tortious interference "with his prospective personal, professional and commercial interest in displaying his artistic and political advocacy advertising poster . . ." are within this Court's jurisdiction under pendent jurisdiction. (Amended Complaint at 2.)

On January 11, 1984, the Court denied Mr. Lebron's motion for a temporary restraining order, finding no irreparable injury. The parties agreed to a consolidated hearing on the motion for a preliminary injunction and a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2).

The Court has considered the testimony of the witnesses, the exhibits, and the pleadings and arguments of counsel. The Court's findings of fact and conclusions of law follow.

### I. *Findings of Fact*

1. WMATA was created in 1966 through a congressionally approved interstate compact. WMATA's purpose is im-

proving public transportation in the metropolitan area. District of Columbia Code § 1–2431 (1981).

2. WMATA leases advertising space for the interiors of its subway stations. These spaces are the free-standing dioramas on the passenger platforms.

3. Both public service and commercial advertisements are accepted for these dioramas, although there is a fee difference between the two types of advertisements. (Testimony of Mr. John Warrington, WMATA's Director of Marketing (Tr. Warrington), at 56–57.)

4. All submitted advertisements are evaluated using guidelines which have been adopted by the WMATA Board of Directors. (Defendant's Ex. 1; Tr. Warrington at 41.) The evaluation is made by Mr. Warrington applying these guidelines. (Tr. Warrington at 82.)

5. Mr. Lebron works as a mechanical artist in New York City. He also creates political and satirical works of commentary and art on his own time. His works have been displayed in art galleries and the New York City subway system. (Testimony of Mr. Lebron (Tr. Lebron) at 12, 15.)

6. The poster at issue expresses Mr. Lebron's political beliefs and is a political advertisement. Mr. Lebron wants to display it in an effort to have an impact on the upcoming Presidential election. (Tr. Lebron at 11–12, 32–33.)

7. The advertisement combines text and a photographic montage. The left side of the photomontage depicts President Reagan, certain members of his Cabinet, and other high government officials. They are seated at a table. They are laughing and the President is made to appear to be simultaneously pointing at a group of persons on the right side of the picture. It is not clear from either the record or the picture whether that group is a single photograph or itself a montage of separate pictures. The group on the right consists of men and women, some of whom are minorities, all of whom are somber in both dress and appearance, and who are characterized by the plaintiff as unemployed.[1] (Tr. Lebron at 22–23.) Some of the facial expressions of the people on the right side may be characterized as sullen or hostile.

8. Mr. Lebron testified that he thought it would be "funny" to juxtapose the pictures which he had seen separately into a single photo-montage. (Tr. Lebron at 22–23.)

9. Mr. Lebron was attempting to make a statement about what he perceives to be the President's alleged concern about the well-being of working people and the ability of businessmen to raise capital for making investments. The advertisement is intended to convey Mr. Lebron's belief about the manner in which certain segments of the American population have reacted to the effects of the Reagan Administration's policies on them. (Tr. Lebron at 22.)

10. This exact poster had been displayed sometime during late 1982 or early 1983 at a number of New York City galleries and the New York Book Fair, and in the New York City subway system.[2] (Tr. Lebron at 17, 19, 24.)

11. In October 1983, Mr. Lebron submitted his request to WMATA to rent diorama space for displaying his advertisement. (Tr. Lebron at 31.) Mr. Warrington rejected the advertisement in November 1983, finding that it did not meet WMATA Guideline No. 2, which states in part that "[a]ll copy and art should avoid conveying derisive, exaggerated, distorted, deceptive or offensive impressions." (Defendant's Ex. 1; Plaintiff's Ex. 3.) Mr. Warrington found the photomontage to be distorted

1. The caption across the picture reads "Tired of the Jelly-bean Republic?" A copy of the advertisement, significantly reduced in size, is attached as an appendix.

2. The New York subway system first rejected the poster, but changed its position following the filing of a suit by the American Civil Liberties Union. (Tr. Lebron at 18–19.) In this case, the Court granted a motion by the American Civil Liberties Union Fund of the National Capital Area to file an amicus curiae memorandum in support of plaintiff's motion for a preliminary injunction.

and deceptive, and rejected it on that basis. He did not reject the advertisement based upon the text of its copy. (Tr. Warrington at 43–44, 59.)

12. Counsel for Mr. Lebron wrote WMATA requesting reconsideration of this decision in November 1983. (Plaintiff's Ex. 4.)

13. Mr. Warrington then met with WMATA's General Counsel. Based on the latter's advice, which was predicated at least in part on WMATA's limited litigation resources, Mr. Warrington reversed his earlier decision and approved the advertisement in December 1983. (Plaintiff's Ex. 5; Tr. Warrington at 45–46.)

14. In October 1983, counsel for Mr. Lebron had offered to place a disclaimer on the poster. The disclaimer states in part that the photographic montage is a composite and does not represent an actual encounter between the persons depicted. (Amended Complaint ¶ 24 at 9; Plaintiff's Ex. 2.) However, the disclaimer would appear in small print at the bottom of the photomontage in the right-hand corner thereof. (Plaintiff's Ex. 1.)

15. Mr. Warrington was concerned about the reversal of positions on the advertisement's acceptability and decided to bring the issue to the attention of WMATA's General Manager. (Tr. Warrington at 46, 64.) The General Manager convened a meeting of selected WMATA personnel to discuss the advertisement. (Tr. Warring-

ton at 46, 62, 64.) The group unanimously found the picture to be deceptive. (Tr. Warrington at 63, 66.)

16. Following that meeting, Mr. Warrington wrote to counsel for Mr. Lebron informing him about the meeting and advising him that Mr. Lebron could not rent the advertising space. (Plaintiff's Ex. 6; Tr. Warrington at 65.)

17. In the past, WMATA has rented subway advertising space for political and social commentary advertisements covering a broad spectrum of political views and ideas. (Defendant's Ex. 3; Tr. Warrington at 53–55.)

18. WMATA treated the entire advertisement as a single entity because the copy appearing on the bottom half and the artwork comprising the top half were submitted as such. (Tr. Warrington at 59.) The copy alone probably would have been accepted; it did not trouble WMATA. The advertisement was not rejected because of its political message. WMATA does not review the content of a political advertisement in deciding whether to accept or reject it. (Tr. Warrington at 47, 61–62.)

19. WMATA permissibly concluded that the photomontage is deceptive and distorted since it depicts an apparent event which actually did not occur.[3]

20. The disclaimer would not effectively prevent passersby from being deceived into believing that the portrayed derisive confrontation actually did occur.[4] The dis-

---

**3.** Mr. Lebron contends he did not intend to deceive the public. (Plaintiff's memorandum in reply to defendant's opposition to motion for a preliminary injunction at 5.) The Court rejects Mr. Lebron's contention that what he describes as marks on the advertisement would place a passerby on notice that the picture was actually a photomontage. (Tr. Lebron at 23.) Persons walking by quickly, or those unfamiliar with the reproduction techniques employed, would be unlikely to presume that the subtle differences in lighting between the two halves of the photomontage or the marks were deliberate as opposed to effects incidentally occurring during the advertisement's production. The pictures admittedly were taken out of context and used to create a false representation of fact. *See Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 13–14, 90 S.Ct. 1537, 1541–

42, 26 L.Ed.2d 6 (1970) (newspaper reported city council sessions during which plaintiff's position on an issue was characterized as "blackmail"; there was no libel when the entire public debates were printed; however, if the paper had reported the meetings in an abbreviated fashion, or had distorted the meetings so that the word "blackmail" had been taken out of the context in which it had been used, then a different case would have existed.)

**4.** The fact that the photomontage is sufficiently ambiguous to allow a discerning viewer to recognize it as a composite is not controlling; the question—which the Court answers in the negative—is whether WMATA unlawfully violated plaintiff's rights in reaching the conclusion which it did.

claimer could be read only if a subway passenger took the time to stop and study the entire advertisement at close range. (Tr. Warrington at 71.) The print size and placement of the disclaimer would not provide adequate notice that the event supposedly being depicted in fact had not occurred.[5]

21. WMATA previously displayed an advertisement which was critical of the Reagan Administration's Central America policy. It pictured children behind a fence in an inset, and soldiers with rifles. WMATA would have rejected the advertisement as deceptive if the photographs had been arranged instead so that the soldiers (presumably American) were shown aiming their rifles at the children behind the fence. (Defendant's Ex. 2; Tr. Warrington at 50–51, 77.)

22. This is the first time WMATA has rejected an advertisement with a picture and/or text about politicians. (Tr. Warrington at 79.)

## II. *Conclusions of Law*

It is undisputed by the parties that the subway stations constitute public fora for First Amendment purposes. They also agree that WMATA engages in state action when leasing the interior advertising spaces. Amended Complaint ¶ 36 at 13; Opposition to Motion for Preliminary Injunction at 2; *Gay Activists Alliance v. WMATA*, 5 Med.L.Rptr. 1404, 1406–07 (D.D.C.1979); *see also Lehman v. City of Shaker Heights*, 418 U.S. 298, 303, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (leasing of advertising space on public buses constitutes state action although that commercial function is incidental to providing public transportation). The existence of state action means that "the policies and practices governing access to the transit system's

advertising space must not be arbitrary, capricious, or invidious." *Lehman, supra,* at 303, 94 S.Ct. at 2717.

### Access to the Advertising Space

### A. *WMATA's Decision Was Not Based on the Subject Matter or Content of the Advertisement*

The Court readily agrees with Mr. Lebron's assertion that his political advertisement falls within the ambit of First Amendment protection. A paid political advertisement is no less deserving of First Amendment protection than other forms of political speech. *Buckley v. Valeo*, 424 U.S. 1, 50–53, 96 S.Ct. 612, 650–51, 46 L.Ed.2d 659 (1976). However, "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake." *Virginia State Board of Pharmacy v. Virginia Citizens Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976); *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340–341, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). Since the Court has found that the photomontage does not constitute the pictorial equivalent of truthful speech, the Court finds no constitutional violation in the final decision of WMATA.

The evidence establishes that WMATA does not screen out politically controversial advertisements or evaluate the content of such advertisements. WMATA has rented advertising space for groups conveying messages about, *inter alia*, child abuse, stopping an American role in Central America, candidacies for local political office, homosexuality, pregnancy consultation services, and selective service registration. (Defendant's Ex. 3.) Those advertisements represent a wide spectrum of views, many of which could be deemed offensive to persons with opposing view-

---

**5.** The copy attached hereto as an appendix is obviously smaller than that which Mr. Lebron seeks to display. Mr. Lebron testified that the actual poster would be four times the size of the facsimile introduced at trial (Plaintiff's Ex. 1; Tr. Lebron at 21.) The facsimile measured approximately 15½" by 10¾"; therefore the actual advertisement would have been approximately five feet by three feet. The disclaimer (in small white print against the jeans of the woman in the middle of the group on the right) on the actual poster would be larger than that depicted on Plaintiff's Ex. 1 or on the reproduction thereof which is appended hereto. However, the incremental size increase still would not provide meaningful notice to a majority of passersby.

points. There was no evidence introduced that WMATA arbitrarily selects only those political subjects it deems to be proper subjects for the advertising spaces. *Cf. U.S. Southwest Africa/Namibia Trade & Cultural Council v. United States (Namibia)*, 708 F.2d 760, 763, 768 (D.C.Cir.1983) (the Federal Aviation Administration could not impose a blanket ban on any political advertising at National and Dulles Airports as this was a subject matter restriction without any accompanying guidelines); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 514–15, 101 S.Ct. 2882, 2896, 69 L.Ed.2d 800 (1981) (city ban on noncommercial advertising on billboards violated First and Fourteenth Amendments as city could not choose appropriate subjects for noncommercial speech); *Carey v. Brown*, 447 U.S. 455, 460–61, 100 S.Ct. 2286, 2289–90, 65 L.Ed.2d 263 (1980) (Court struck down a statute prohibiting any kind of residential picketing but allowing peaceful labor picketing; the statute distinguished between kinds of expressions solely on the content of the message being conveyed.)

Mr. Lebron acknowledges that the photomontage portion of the advertisement is a fabrication and depicts an apparent confrontation which did not occur. While he contends that the poster will not deceive anyone, WMATA concluded and the Court has made a factual finding to the contrary.[6] The Court may find only that many, if not most, persons walking by the advertisement at somewhat of a distance would not assume that they were seeing a photomontage, but rather a depiction of an actual occurrence—and that would convey a false or misleading impression. *See, e.g., Tomei v. Finley*, 512 F.Supp. 695, 698 (N.D.Ill. 1981) (court barred use of acronym "REP" by Democratic candidates, finding it an "impermissible distortion" which conveyed "deliberately false expression" to voters

that defendants were actually Republicans; court found no First Amendment protection for this form of expression); *see also Chrysler Corp. v. FTC*, 561 F.2d 357, 363 (D.C.Cir.1977) (a deceptive advertisement is one having a tendency and capacity to convey misleading impressions although other non-misleading interpretations are possible).

WMATA's prohibition against deceptive or distorted advertisements applies to all the advertisements submitted to it—whether of a commercial, political, or public service nature. (Defendant's Ex. 1.) Therefore, there is no preferential treatment accorded to one type of speech over another. *Cf. Police Department of Chicago v. Mosley*, 408 U.S. 92, 100–01, 92 S.Ct. 2286, 2292–93, 33 L.Ed.2d 212 (1972) (city ordinance was unconstitutional which prohibited all types of picketing near schools except peaceful picketing of a school involved in a labor dispute). The rejection by WMATA was based on the deceptive manner of the picture's presentation, not on the nature of the message being conveyed. Mr. Lebron has failed to prove that the subject matter provided the decisional basis.

**B. *WMATA's Guideline No. 2 is a Valid Regulation***

Mr. Lebron contends that the WMATA guidelines are unconstitutionally vague. (Amended Complaint ¶ 41 at 14.) WMATA counters that its regulations are narrowly-drawn and constitutional. (Opposition to motion for a preliminary injunction at 9.)

■ There is a long-standing recognition that a reasonable time, place, and manner regulation may be applied concerning access to a public forum as long as the regulation is "content neutral, serves a significant government interest and leaves open

---

6. In enacting the Communications Act of 1934, Congress expressly forbade any broadcaster's decision about the content of political speech. Under 47 U.S.C. § 315(a) (Supp. III 1979), a radio or television licensee of the FCC has no power to censor the material broadcast by a candidate for political office, thus implying that such a right might well exist in the absence of a statutory prohibition. The Court is not stating that WMATA has the power to, or did, censor the political message in Mr. Lebron's advertisement. However, it is within WMATA's power to establish reasonable regulations about the manner of presentation of the advertisements (political or otherwise) which it accepts.

adequate alternative channels for communication." *United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981); *Namibia, supra,* 708 F.2d at 767–68, 771. There can be no discrimination between types of speech based upon the content of respective messages. *Toward a Gayer Bicentennial Committee v. The Rhode Island Bicentennial Foundation,* 417 F.Supp. 632, 639–40, n. 9 (D.R.I.1976). Nor may the regulation provide "limitless discretion" to the official implementing it. *Niemotko v. Maryland,* 340 U.S. 268, 271–72, 71 S.Ct. 325, 327, 95 L.Ed. 267 (1951).

■ As discussed *supra,* WMATA's guidelines are content neutral. They are applied uniformly to commercial and noncommercial speech, and do not differentiate among political viewpoints in political and social advertisements.

WMATA articulates two governmental interests served by its Guideline No. 2. The first is WMATA's responsibility to the public in preventing purposeful deceptions. (Opposition to motion for preliminary injunction at 10.) Mr. Warrington testified that allowing a deception of this nature could create a precedent which would allow "all sorts of deceptions and distortions" in the future. (Tr. Warrington at 46, 66–67.) WMATA's concern about deceptive advertisements is not limited to noncommercial speech. A cigarette advertisement which stated that smoking could improve one's health would pose similar deceptiveness problems. (Tr. Warrington at 80.) The requirement that advertisements not be deceptive validly and permissibly regulates the manner of an advertisement's expression, not its content or subject.

The second governmental interest is WMATA's proprietary interest in raising revenue from its advertising space. *See Namibia, supra,* 708 F.2d at 770–71 (government has an interest in ensuring advertising revenue). WMATA voices a concern that there could be "considerable loss of advertisement revenue from those advertisers who will not become associated

with untruthful, distorted or deceptive displays." (Opposition to motion for preliminary injunction at 10.) It is the deceptive manner of presentation, not the message content, which motivates this concern. WMATA has risked revenue loss from the controversial advertisements it previously has accepted. Its revenue concerns in this case flow not from controversial political advertisements, but from deceptive or distorted advertisements, regardless of the subject of the message's content.

The regulation does provide alternative channels for communicating. Mr. Lebron is unwilling to display solely his advertisement's text without the photomontage, asserting that he believes the picture adds to the statement being made. (Tr. Lebron at 25.) However, WMATA has stated that it probably would approve and display the text without the deceptive photomontage. (Opposition to motion for preliminary injunction at 6–7, 14; Tr. Warrington at 47.) The regulation does not foreclose Mr. Lebron from conveying his message as long as it is not done deceptively.

Also, the regulation does not impede Mr Lebron's ability to convey his message in other public fora. Mr. Lebron has chosen to seek subway advertising space, asserting that is more affordable for him. (Tr. Lebron at 16.) However, this exact poster already has been widely displayed in New York City, and the decision of WMATA does not prevent Mr. Lebron from displaying his advertisement at galleries or elsewhere in the Washington, D.C., area. Thus, the regulation at issue differs drastically from those in the cases in which an inability to obtain the requisite license or permit totally precluded expression of speech in a public forum. *See, e.g., Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 552–54, 95 S.Ct. 1239, 1243–44, 43 L.Ed.2d 448 (1975), and cases cited therein.

Finally, Mr. Warrington does not have unfettered discretion in applying the WMATA guidelines. He relies on the guidelines and upon the advice of WMATA's General Counsel. Moreover, as this case's history indicates, Mr. Warrington's decisions may

be reviewed by WMATA's General Manager and other WMATA personnel.

The evidence presented by Mr. Lebron fails to refute the legitimacy of WMATA's Guideline No. 2 or its application in this case. Contrary to Mr. Lebron's assertion, there has been no prior restraint of speech. This case is not analogous to those cases in which the Supreme Court has found unconstitutional prior restraint of speech where ordinances allowed one official or an official body unbridled discretion in deciding whether the desired speech expression could occur in the public forum. The ordinances in such cases were not narrowly drawn and permitted the decision-maker to deny use of the public forum based on the content of the proposed expression. *See, e.g., Southeastern Promotions, Ltd., supra,* 420 U.S. at 554–55, 95 S.Ct. at 1244–45 (board's rejection of application to use auditorium for the musical "Hair" was based on the content of the musical and judgment that the show would violate the law); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 149–51, 89 S.Ct. 935, 937–38, 22 L.Ed.2d 162 (1969) (city ordinance was unconstitutional as City Commission had absolute discretion in allowing or denying a parade or demonstration permit on any city street based solely on a broadly worded ordinance); *Cantwell v. Connecticut,* 310 U.S. 296, 305–07, 60 S.Ct. 900, 904–05, 84 L.Ed. 1213 (1940) (Court struck down ordinance allowing state official to decide whether a cause was a religious one or not before granting or denying a solicitation license; the decision was based solely on official's own judgment about the cause's status).

The manner in which the decision was made about Mr. Lebron's advertisement differs from these situations. There was no evaluation of the message's content or purpose in deciding whether to rent advertising space to Mr. Lebron. The Court finds no prior restraint of speech analogous to that in the above-cited cases.

### III. *Conclusion*

The Court finds that WMATA did not reject Mr. Lebron's advertisement due to its political content. The decision was based on the deceptive manner in which Mr. Lebron depicted an apparently derisive confrontation which actually did not occur. In making its decision, WMATA applied a constitutionally valid regulation. WMATA's Guideline No. 2 is content neutral and delimits the manner of presentation, not the message content, of acceptable advertisements. The Court accordingly finds that there has been no violation of Mr. Lebron's First and Fourteenth Amendments rights or of 42 U.S.C. § 1983. The Court denies Mr. Lebron's request for injunctive relief and finds for the defendant WMATA on the merits.

WMATA has conceded that Mr. Lebron did rely to his detriment on its initial acceptance of the poster and incurred certain expenses in preparing his advertisement, and has agreed that he is entitled to money damages based upon that reliance. (Opposition to motion for preliminary injunction at 13.) WMATA shall reimburse Mr. Lebron for those costs, based upon an itemized bill to be submitted to it.