**WARD LABORATORIES, INC., et al.,**
Petitioners,

v.

**FEDERAL TRADE COMMISSION,**
Respondent.

No. 118, Docket 25660.

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1960.

Decided April 14, 1960.

---

Martin J. Scheiman, New York City, for petitioners.

Gerald Harwood, Attorney, Federal Trade Commission, Washington, D. C. (Daniel J. McCauley, Jr., General Counsel, Alan B. Hobbes, Asst. General Counsel, Federal Trade Commission, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

Petitioners, Ward Laboratories, Inc., Emile E. Kling, and Joseph J. Seldin, individually and as officers of Ward, Comate Laboratories, Inc. and Sebacin, Inc. seek to set aside an order of the Federal Trade Commission (FTC) requiring them to cease and desist from allegedly false advertising of preparations sold by them and represented, in substance, as: (1) preventing baldness; (2) causing the growth of new hair; and (3) preventing excessive hair fall.

Little purpose is served by reviewing the expert medical testimony. Four physicians, expert in dermatology were called by FTC; two and a biochemist and toxicologist by respondents (petitioners here). The hearing examiner most carefully analyzed the testimony of all experts. His conclusion that "In truth and in fact the most common cause of baldness is due to heredity, age

and endocrine balance, commonly referred to as male pattern baldness; that this type of baldness constitutes 95% of all cases of baldness and regardless of the exact formula or the combination of the ingredients or preparations, or the methods of application of respondents' preparations, such will not remedy or cure the common cause, or a significant cause, of baldness; will not remedy or cure the common type of baldness; will not prevent baldness or partial baldness; will not cause the growth of new hair; and will not prevent excessive hair fall," is supported by substantial evidence. Having so concluded, the examiner molded the order to cease and desist in the manner best calculated to eliminate the deception contained in the advertising.

■ Petitioners now raise several points of alleged error. There is no merit in their contention that "the findings complained of were arbitrary and capricious" and were based on "a conglomeration of disputed theory and medical disagreement." It is indeed a rare case where medical experts are called which does not involve disagreement. Here, however, the examiner is supported by clear and convincing testimony from well qualified witnesses. His decision and findings are the antithesis of "arbitrary and capricious."

The cease and desist order requires petitioners to disclose that their preparations will only be effective in baldness not of the male pattern variety and also to disclose that nearly all cases of baldness fall within the male pattern category.

■ Petitioners argue that "The provisions of the order requiring affirmative disclosure in petitioners' advertising are improper and unlawful." This argument presents a more difficult problem. Any requirement of an affirmative disclosure of a negative is always to be approached with caution. Merely because a remedy is useful for only one ailment is no reason to demand an accompanying statement of all the ills for which it is not beneficial. Even this principle, however, must yield where the advertisements are

misleading because of failure to reveal facts material in the light of the representations made therein. In arriving at such a conclusion the advertisements (format and copy) and the potential customer they are intended to reach must be analyzed.

■ The customer is the average male, of which there are millions, who because of masculine vanity will grasp at any straw in the form of a remedy which will save his hair or stem the hair line retreat. He does not know (and probably cares less) whether he is a victim of baldness due to heredity, age, endocrine imbalance or whether his scalp, as petitioners suggest, may be the nesting place of "Millions of trouble-breeding bacteria" which are depicted by illustrations in the advertisements in the rather unphotogenic way in which bacteria usually photograph as "living on your sick scalp." Regardless of the cause the customer wants to save his hair. His eye will be caught by the dominant theme of the advertisements, i. e., "Save Your Hair" and "Baldness and what *you can do* about it." If the customer will "Try Ward's Formula" or, as to "Comate," ask petitioners to "rush my bottle," he will be doing something about it and false hopes will be temporarily kindled. In fairness to petitioners it must be said that the advertisements do reveal in small type qualifying phrases, such as "these destructive scalp germs now recognized by many medical authorities as a significant cause of baldness" and "But many medical authorities now believe a specific scalp disease [seborrhea] is the most common cause of hair loss." This very statement, however, is contrary to substantial evidence that 90%–95% of all baldness does not result from these germ causes. Moreover, advertisements are not to be judged by their effect upon the scientific or legal mind which will dissect and analyze each phrase but rather by their effect upon the average member of the public who more likely will be influenced by the impression gleaned from a quick glance at the most legible words. Thus

it is obvious here why some affirmative statement is necessary to dispel an otherwise misleading statement.

■ A fair reading of the advertisements, taking into account the various sizes of type, the stress placed upon certain words and the illustrations, make it essential for the protection of the public to incorporate in the order provisions to enforce the examiner's finding that "respondents' advertising is misleading because of failure to reveal the fact that in the great majority of cases, loss of hair or baldness is of the type known as male pattern baldness and that when baldness is of that type, respondents' preparations are of no value in the treatment thereof."

Alberty v. Federal Trade Commission, 1950, 86 U.S.App.D.C. 238, 182 F.2d 36, heavily relied upon by respondents is not in conflict. In that case there were no findings as here that failure to make any affirmative statement in itself was misleading. It may well be that, as the court said in Alberty, "the Commission goes far across the line when it attempts to require the advertiser of a drug admittedly beneficial in one ailment to state affirmatively that there are other ailments not reached by the drug" 182 F.2d 36, 39. Here, however, petitioners' own advertising requires the antidote because it definitely intends to, and does, give the impression that baldness is largely caused by something which their preparations can cure.

■ The power of the FTC to require affirmative disclosure where necessary to prevent deception has long been recognized (Wybrant System Products Corp. v. Federal Trade Commission, 2 Cir., 1959, 266 F.2d 571; L. Heller & Son v. Federal Trade Commission, 7 Cir., 1951, 191 F.2d 954; Haskelite Manufacturing Corporation v. Federal Trade Commission, 7 Cir., 1942, 127 F.2d 765).

The petition to review and set aside the order is denied, the FTC order is affirmed and an order shall issue as provided for in Federal Trade Commission Act, sec. 5(c), 52 Stat. 113, 15 U.S.C.A. § 45(c).