The J. B. WILLIAMS COMPANY, Inc.,
and
Parkson Advertising Agency, Inc.,
Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 16969.

United States Court of Appeals
Sixth Circuit.

Aug. 11, 1967.

James H. McGlothlin, Washington, D. C., for petitioners, Michael S. Horne,

Washington, D. C., on the brief, Covington & Burling, Washington, D. C., of counsel.

Miles J. Brown, Federal Trade Commission, Washington, D. C., for respondent, James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, Gerald J. Thain, Atty., Federal Trade Commission, Washington, D. C., on the brief.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and WEINMAN*, District Judge.

CELEBREZZE, Circuit Judge.

The question presented by this appeal is whether Petitioners' advertising of a product, Geritol, for the relief of iron deficiency anemia, is false and misleading so as to violate Sections 5 and 12 of the Federal Trade Commission Act.[1] At the conclusion of an administrative proceeding upon a complaint which charged Petitioners with engaging in unfair and deceptive acts, the Federal Trade Commission affirmed in part the findings of the Hearing Examiner that the Petitioners had violated Sections 5 and 12 of the Federal Trade Commission Act. Petitioners seek review to set aside the Order to cease and desist, issued by the Commission—Appendix, Table I.

The J. B. Williams Company, Inc. is a New York corporation engaged in the sale and distribution of two products known as Geritol liquid and Geritol tablets. Geritol liquid was first marketed in August, 1950; Geritol tablets in February, 1952. Geritol is sold throughout the United States and advertisements for Geritol have appeared in newspapers and on television in all the States of the United States.

Parkson Advertising Agency, Inc. has been the advertising agency for Williams since 1957. Most of the advertising money for Geritol is spent on television advertising. Several typical television advertisements are found in the Appendix to this Opinion in Table II.

The Commission's Order[2] requires that not only must the Geritol advertisements be expressly limited to those persons whose symptoms[3] are due to an existing deficiency of one or more of the vitamins contained in the preparation, or due to an existing deficiency of iron, but also the Geritol advertisements must affirmatively disclose the negative fact that a great majority of persons who experience these symptoms do not experience them because they have a vitamin or iron deficiency; that for the great majority of people experiencing these symptoms, Geritol will be of no benefit. Closely related to this requirement is the further requirement of the Order[4] that the Geritol advertisements refrain from representing that the symptoms are generally reliable indications

---

* Honorable Carl A. Weinman, Chief Judge, United States District Court, Southern District of Ohio, sitting by designation.

1. Section 5(a) (1), 52 Stat. 111, 15 U.S.C. § 45(a) (1):
   "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."
   "Section 12, 52 Stat. 114, 15 U.S.C. § 52:
   "(a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—
   (1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, or cosmetics; or

   (2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.
   (b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of section 45 of this title."

2. 1(d) of the final Order of the Commission.

3. The use of the word "symptoms" will include the symptoms of tiredness, loss of strength, run-down feeling, nervousness or irritability.

4. 1(e).

of iron deficiency. On oral argument counsel for Petitioners stated that except for one minor objection to 1(i) of the Order, there were no objections to the requirements contained in 1(g) and 1(h) of the Order.

An understanding of the function of iron in the human body and how it is lost is essential to an understanding of the issues in this case and the medical testimony relating to these issues.

The human body does not synthesize iron. Consequently, all iron in the human must come from outside sources, normally from food. The adult body will have an average of 2.6 grams of iron for a small woman, and six grams of iron for a large adult male. The daily amount of iron in the average American adult diet has been estimated at from 7 mg. to 15 mg. Iron is generally conserved and reutilized.

Approximately 70% of all the iron in the normal adult is in the circulating blood as a component of hemoglobin, the red material in the red blood cells. In the creation of hemoglobin, iron is an essential major constituent. Hemoglobin carries oxygen which is essential for the functioning of cells throughout the body.

A minute amount of iron (one mg. or less) is lost each day in the feces, sweat, and urine. Blood loss, either present or past, accounts for the major loss of iron in the body. In the male, this is usually due to severe nose bleeds, bleeding from the gums, peptic ulcer, cancer of the stomach, cancer of the bowels and hemorrhoids. In the woman, the major cause of iron loss occurs from bleeding during the menstrual period, and iron given to the fetus during pregnancy. Inadequacy of iron in the diet and malabsorption of iron account for only a small amount of iron loss.

The normal hemoglobin value is 12 to 16 grams for adult females and 14 to 18 grams for adult males. The loss of iron results in iron deficiency anemia when the hemoglobin level is below the acceptable range for a particular individual. Thus iron deficiency anemia results when there is a lack of sufficient iron for the synthesis of hemoglobin. Adequate red blood cells cannot be produced with an insufficient amount of hemoglobin. As noted previously, hemoglobin carries oxygen which is essential for the functioning of all body cells. Severe iron deficiency can be diagnosed when an examination of the blood shows that the red blood cells are pale (hypochromic) and the red cells are abnormally small (microcytic) from a lack of sufficient hemoglobin to color and fill them. Not all iron deficiency anemia is hypochromic and microcytic; when the anemia is mild, there may be no change in color of the blood or the cell size. Since the red blood cells are mass-produced in bone marrow, the most reliable test is to extract a sample of the bone marrow and examine it for iron content. This test is painful, requires skill, and is generally not done by the general practitioner.

We will first consider the Commission's finding that the Geritol advertisements falsely represent that the symptoms mentioned are generally reliable indications of iron deficiency anemia, and that the great majority of people who are tired and run-down are not so because of iron deficiency anemia.

Noted specialists in hematology, obstetrics and gynecology testified for both sides. Their testimony was not all in agreement. Doctors Dameshek, Goldsmith, McGanity, Fein, Moore and Arrowsmith testified that the symptoms presented in the Geritol advertising are common symptoms of many diseases and are not specific to iron deficiency anemia. These symptoms occur in most diseases, and most commonly occur in neurosis or nervous tension. Only in severe or perhaps moderately severe cases of iron deficiency anemia are these symptoms present. The Commission's finding that the Geritol advertisements create a false and misleading impression on the public by taking common or universal symptoms and representing these symptoms as generally reliable indications of iron deficiency or iron deficiency anemia, is supported by substantial evidence.

Petitioners maintain they were not given notice of this issue. This specific issue was not charged in the complaint, and Government counsel stated early in the proceeding that this issue was not present.

■ However, evidence bearing on the causal connection between the symptoms of tiredness and iron deficiency anemia was present throughout the record, and is clearly relevant in substantiating the small minority charge. Reading the entire testimony, we cannot find that Petitioners were unfairly prejudiced by this finding, nor can we find an objectional variance between the complaint and the Order. See Armand Co., Inc. v. Federal Trade Commission, 84 F.2d 973 (C.A.2, 1936); Colgate-Palmolive Company v. Federal Trade Commission, 310 F.2d 89 (C.A.1, 1962); Continental Wax Company v. Federal Trade Commission, 330 F.2d 475 (C.A.2, 1964).

The main thrust of the Commission's Order is that the Geritol advertising must affirmatively disclose the negative fact that a great majority of persons who experience these symptoms do not experience them because there is a vitamin or iron deficiency.

The medical evidence on this issue is conflicting and the question is not one which is susceptible to precise statistical analysis. The evidence presented a range estimated by the doctors to be from one percent to ten percent of the people in this country with iron deficiency or iron deficiency anemia. It is clear that the incidence of iron deficiency anemia is higher in women than in men. Doctors Dameshek, Adelson and McGanity testified that a majority of pregnant women do not develop iron deficiency anemia. Doctor Wintrobe and Doctor Beutler testified that iron deficiency anemia is the most common and most important nutritional deficiency.

Since the symptoms of tiredness, loss of strength, nervousness or irritability are universal, non-specific complaints, there was naturally a disagreement as to whether these symptoms are usually due to iron deficiency anemia, or are present when a person has iron deficiency anemia.

There was testimony that in severe or moderately severe cases the symptoms occurred as a result of iron deficiency anemia. The highest incidence of iron deficiency anemia was found to be in women in the child bearing age group. Doctor Dameshek said the presence of these symptoms was hardly ever due to iron deficiency anemia; Doctor Moore said the presence of these symptoms could be explained on a basis other than iron deficiency anemia, and that only in a minority of women were these symptoms due to iron deficiency anemia; Doctor Reznikoff did not accept these symptoms as being caused by iron deficiency anemia. Doctor Reznikoff testified:

"Q. * * * Doctor, in your observation, what are the symptoms of anemia, iron-deficiency anemia, I should say?

"A. Well, iron-deficiency anemia results in a deficiency of hemoglobin and hemoglobin has, as its main purpose, the transportation of oxygen to the tissues. So the symptoms would depend on what we call anoxia, or deficiency of oxygen. A patient showing anoxia would usually be short of breath, with the exertion that would previously not bother him. His pulse rate would be increased. His blood pressure would usually be decreased compared to his normal blood pressure. He would feel weak with exertion. He might have a light fever. Most patients with that condition do. It is not very marked, and it usually doesn't cause the patient any discomfort."

"Q. I would like to show you page 26 where you are speaking about anoxia, and you say that, 'Unless the deficiency in the oxygen-carrying function of the blood causes lack of oxygen in the tissues, the patient will not suffer much disability from the anemia itself.'

continuing: 'The term 'tired blood' is ridiculous. The young girl who stands so pathetically against the wall may be menstruating excessively or is not eating adequately and may have some decrease in her blood count. But she is rarely anoxic.' Is that your opinion today, doctor?

"A. Yes.

"And it was your opinion in 1958?

A. Yes.

"Q. Isn't it true, doctor, that you have to have a very low hemoglobin for iron-deficiency anemia to cause anoxia?

"A. You either have to have a rather marked degree of anemia or the anemia has to be very rapid in its formation. Do I make my meaning clear?"

■ Not all of the approximate ten percent of the population who have iron deficiency anemia have moderate to severe anemia, and consequently exhibit mild or no symptoms. While there are no statistics available as to the number of people who are tired and run-down, or the number of people who are tired and run-down due to iron deficiency anemia, there is direct testimony that only a minority of people with these symptoms exhibit these symptoms because of iron deficiency anemia. Considering this evidence along with the fact that these symptoms are common and non-specific, the Commission could reasonably infer, and there was substantial evidence to support the finding, that the majority of the people who have these symptoms, have them because of causes other than iron deficiency anemia.

■ While the advertising does not make the affirmative representation that the majority of people who are tired and rundown are so because of iron deficiency anemia and the product Geritol will be an effective cure, there is substantial evidence to support the finding of the Commission that most tired people are not so because of iron deficiency anemia, and the failure to disclose this fact

is false and misleading because the advertisement creates the impression that the tired feeling is caused by something which Geritol can cure. See Ward Laboratories, Inc. v. Federal Trade Commission, 276 F.2d 952 (C.A. 2, 1960).

In Carter Products, Inc. v. Federal Trade Commission, 323 F.2d 523 (C.A. 5, 1963) the Court said:

"A. First, in considering the Commission's findings and order, the reviewing court must recognize certain fundamental principles. 'The meaning of advertisements or other representations to the public, and their tendency or capacity to mislead or deceive, are questions of fact to be determined by the Commission'. Kalwajtys v. F. T. C., 7 Cir., 1956, 237 F.2d 654, 65 A.L.R.2d 220, cert. den'd, 1957, 352 U.S. 1025, 77 S.Ct. 591, 1 L.Ed.2d 597. It is the Commission's function to find these facts and a court should not disturb its determination unless the finding is arbitrary or clearly wrong. Kalwajtys v. F. T. C.; Gulf Oil Corp. v. F. T. C., 5 Cir., 1945, 150 F.2d 106, 108. Furthermore, the Commission may draw its own inferences from the advertisement and need not depend on testimony or exhibits (aside from the advertisements themselves) introduced into the record. New Amer. Library of World Literature v. F. T. C., 2 Cir., 1954, 213 F.2d 143; see Zenith Radio Corp. v. F. T. C., 7 Cir., 1944, 143 F.2d 29. The Commission need not confine itself to the literal meaning of the words used but may look to the overall impact of the entire commercial."

See also National Bakers Services, Inc. v. Federal Trade Commission, 329 F.2d 365 (C.A. 7, 1964); P. Lorillard Co. v. Federal Trade Commission, 186 F.2d 52 (C. A. 4, 1950); Charles of The Ritz Distributors Corp. v. Federal Trade Commission, 143 F.2d 676 (C.A. 2, 1944).

■ Here the advertisements emphasize the fact that if you are often tired and run-down you will feel stronger fast by taking Geritol. The Commission, in looking at the overall impression

created by the advertisements on the general public, could reasonably find these advertisements were false and misleading. The finding that the advertisements link common, non-specific symptoms with iron deficiency anemia, and thereby create a false impression because most people with these symptoms are not suffering from iron deficiency anemia, is both reasonable and supported by substantial evidence. The Commission is not bound to the literal meaning of the words, nor must the Commission take a random sample to determine the meaning and impact of the advertisements. Carter Products, Inc. v. Federal Trade Commission, supra, 323 F.2d 523 (C.A. 5, 1963).

Petitioners argue vigorously that the Commission does not have the legal power to require them to state the negative fact that "in the great majority of persons who experience such symptoms, these symptoms are not caused by a deficiency of one or more of the vitamins contained in the preparation or by iron deficiency or iron deficiency anemia;" and "for such persons the preparation will be of no benefit."

■ We believe the evidence is clear that Geritol is of no benefit in the treatment of tiredness except in those cases where tiredness has been caused by a deficiency of the ingredients contained in Geritol. The fact that the great majority of people who experience tiredness symptoms do not suffer from any deficiency of the ingredients in Geritol is a "material fact" under the meaning of that term as used in Section 15 [5] of the Federal Trade Commission Act and Petitioners' failure to reveal this fact in this day when the consumer is influenced by mass advertising utilizing highly developed arts of persuasion, renders it difficult for the typical consumer to know whether the product will in fact meet his needs unless he is told what the product will or will not do. This does not fall within the sphere of negative advertising, it merely presents to the consumer an opportunity to make an intelligent choice.

Petitioners rely on Alberty v. Federal Trade Commission, 86 U.S.App.D.C. 238, 182 F.2d 36, certiorari denied 340 U.S. 818, 71 S.Ct. 49, 95 L.Ed. 601, for the proposition that the Commission cannot order them to disclose what their product will not do.

In *Alberty*, the Court held that the Commission must make certain findings before compelling affirmative disclosure. The Court said:

"The Commission must find either of two things before it can require the affirmative clause complained of: (1) that failure to make such statement is misleading because of the consequences from the use of the product, or (2) that failure to make such statement is misleading because of the things claimed in the advertisement. There is no such finding here." 182 F.2d 36, 39.

The *Alberty* case was distinguished and the required findings were made by the Commission in Keele Hair & Scalp Specialists, Inc. v. Federal Trade Commission, 275 F.2d 18 (C.A. 5, 1960), and Ward Laboratories, Inc. v. Federal Trade Commission, supra, 276 F.2d 952 (C.A. 2, 1960). In the *Keele* case, the advertisement said, in part: "But today baldness is unnecessary; * * * but the hopeless cases are few; * * * ninety-five percent of all cases of hair loss come within the scope of Keele treatment." In the *Ward* case, the advertisement said "save

---

5. 15 U.S.C.A. § 55. "(a) (1) The term 'false advertisement' means an advertisement, other than labeling, which is misleading in a material respect; and in determining whether any advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the commodity to which the advertisement relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. * * * "

your sick hair from trouble breeding bacteria." The substantial evidence in both was that 90 to 95 percent of all baldness does not result from germ causes.

In the *Ward* case the Court held:

"Here, however, petitioners' own advertising requires the antidote because it definitely intends to, and does, give the impression that baldness is largely caused by something which their preparations can cure." 276 F.2d 952, 955.

In the *Keele* case the Court said:

"In the instant case the Commission made the required findings and on the basis of these findings issued its order requiring that the petitioners disclose affirmatively that Keele preparation would not be effective against mole pattern baldness. Failure to disclose that approximately 95 percent of the cases of baldness fall within the mole pattern type is plainly misleading, when the petitioners claim they treat effectively virtually all cases of baldness." 275 F.2d 18, 23.

■ Under the facts of this case, the disclosure requirement of 1(d) (1) is both proper and justified.

The Commission also found that Petitioners' advertisements represent that Geritol is generally an effective cure for tiredness because of its iron and vitamin content. The Petitioners concede that their Geritol advertisements must be limited to those persons whose symptoms are due to iron deficiency anemia. Petitioners contend their advertisements are so limited.

The advertisements say that the condition of tiredness and run-down feeling may be caused by iron deficiency, and, if it is, Geritol will give fast relief. Geritol, then, is good for iron deficiency anemia. The Commission has found, and we have agreed, that the advertisements create the impression that iron deficiency anemia causes most tiredness. The Commission's conclusion is reasonable when it completed the syllogism by finding that the advertisements represent that Geritol is good for most tiredness. It is this representation that Geritol is good for most tiredness which is the inherent vice of the advertisements.

■ The inferences reasonably to be drawn from the evidence are for the Commission, and the findings of the Commission are conclusive if supported by substantial evidence. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Libbey-Owens Ford Glass Co. v. Federal Trade Commission, 352 F.2d 415 (C.A. 6, 1965); Keele Hair & Scalp Specialists, Inc. v. Federal Trade Commission, supra, 275 F.2d 18 (C.A. 5, 1960).

■ The Commission forbids the Petitioners' representation that the presence of iron deficiency anemia can be self-diagnosed or can be determined without a medical test.[6] The danger to be remedied here has been fully and adequately taken care of in the other requirements of the Order. We can find no Congressional policy against self-medication on a trial and error basis where the consumer is fully informed and the product is safe as Geritol is conceded to be. In fact, Congressional policy is to encourage such self-help. In effect the Commission's Order 1(f) tends to place Geritol in the prescription drug field. We do not consider it within the power of the Federal Trade Commission to remove Geritol from the area of proprietary drugs and place it in the area of prescription drugs. This requirement of the Order will not be enforced. We also find this Order is not unduly vague and fairly apprises the Petitioners of what is required of them. Petition denied and, except for 1(f) of the Commission's Order, enforcement of the Order will be granted.

## APPENDIX

### TABLE I

The pertinent parts of the final Order of the Commission provide, in part:

1. Disseminating or causing to be disseminated by means of the United

---

6. 1(f) of the Commission's Order.

States mails or by any means in commerce, as "commerce" is defined in the Federal Trade Commission Act, any advertisement:

(a) which represents directly or by implication and without qualification that the preparation is an effective remedy for tiredness, loss of strength, run-down feeling, nervousness or irritability;

(b) which represents directly or by implication that the preparation is a generally effective remedy for tiredness, loss of strength, run-down feeling, nervousness or irritability;

(c) which represents directly or by implication that the preparation is an effective remedy for tiredness, loss of strength, run-down feeling, nervousness or irritability in more than a small minority of persons experiencing such symptoms;

(d) which represents directly or by implication that the use of such preparation will be beneficial in the treatment or relief of tiredness, loss of strength, run-down feeling, nervousness or irritability, unless such advertisement expressly limits the claim of effectiveness of the preparation to those persons whose symptoms are due to an existing deficiency of one or more of the vitamins contained in the preparation, or to an existing deficiency of iron or to iron deficiency anemia, and, further, unless the advertisement also discloses clearly and conspicuously that: (1) in the great majority of persons who experience such symptoms, these symptoms are not caused by a deficiency of one or more of the vitamins contained in the preparation or by iron deficiency or iron deficiency anemia; and (2)

for such persons the preparation will be of no benefit;

(e) which represents directly or by implication that tiredness, loss of strength, run-down feeling, nervousness or irritability are generally reliable indications of iron deficiency or iron deficiency anemia;

(f) which represents directly or by implication that the presence of iron deficiency or iron deficiency anemia can be self diagnosed or that either can generally be determined without a medical test conducted by or under the supervision of a physician;

(g) which represents directly or by implication that the use of such preparation will increase the strength or energy of any part of the body in any amount of time less than that in which the consumer may actually experience improvement;

(h) which represents directly or by implication that the use of such preparation will promote convalescence from a cold, flu, fever, virus infection, sore throat or any other winter illnesses;

(i) which represents directly or by implication that the vitamins supplied in such preparation are of any benefit in the treatment or relief of an existing deficiency of iron or iron deficiency anemia.

2. Disseminating, or causing to be disseminated, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of any such preparation in commerce, as "commerce" is defined in the Federal Trade Commission Act, any advertisement, which contains any of the representations prohibited in, or which fails to comply with the affirmative requirements of, paragraph 1 hereof.

APPENDIX

TABLE II

*TED MACK:* You know, these weeks before the Christmas holidays probably keep you busier than usual—so, if you get a little tired once in a while, it's no wonder.

However * * * if you *often* have that tired and run-down feeling * * * and if you take vitamins yet *still* feel wornout, remember * * * your trouble may be due to iron-poor blood. And vitamins *alone* can't build up iron-poor blood.

But GERITOL can! That's because just two GERITOL tablets * * *

or two tablespoons of liquid GERITOL * * *

contain 7 vitamins * * *plus

*twice* the iron in a whole pound of calves' liver.

GERITOL begins to strengthen iron-poor blood in 24 hours. Check with your doctor. And if you've been feeling rundown because of iron-poor blood * * *

take GERITOL *every day*.

You'll *feel stronger fast* in just seven days or your money back from the GERITOL folks.

*ART LINKLETTER:* The other day I heard a lady say, "I feel so tired every night, a team of horses couldn't drag me out!" If you feel too tired even to go out and have a little fun * * * that worn-out feeling may be due to iron-poor blood. And if you've been taking vitamins, yet *still* feel tired, remember, *vitamins alone* can't build up iron-poor blood.

But GERITOL can! Because * * *

just *2* GERITOL tablets * * *

or *2* tablespoons of GERITOL liquid * * *

contain 7 vitamins * * *plus

*twice* the iron in a pound of calves' liver.

In only one day GERITOL-iron is in your bloodstream carrying *strength* and *energy* to every part of your body. Check with your doctor * * * and if you've been feeling worn-out because of iron-poor blood * * * and especially after a cold, the flu or sore throat * * *

take GERITOL *every day*.

*Feel stronger fast* * * * in just 7 days or your money back from the GERITOL folks.

And to save one dollar * * buy the economy size.

*TED MACK:* They say there's a reason for everything. Now, if you've been feeling tired and run-down, the reason may be iron-poor blood. And that's why, even though you take vitamins, you may still feel tired.

For vitamins *alone* can't build up iron-poor blood.

But GERITOL *can!* Medical tests prove it! Patients who suffered from iron-poor blood were given GERITOL *every day*.

This chart shows the hemoglobin before the test. Day after day,

the hemoglobin went up * * * and up * * * and *up!*

Result—
patients felt stronger.

just 2 GERITOL tablets or 2 tablespoons of GERITOL liquid

contain 7 vitamins * * PLUS * * *

*twice* the iron in a pound of calves' liver.

In only *one* day GERITOL-iron is in your bloodstream carrying *strength* and *energy* to *every* part of your body. Check with your doctor. And if iron-poor blood is your problem, take GERITOL *every day*.

You'll *feel stronger fast* * * * in just 7 days * * * or your money back from the GERITOL folks.