**FEDERAL TRADE COMMISSION,**
Plaintiff,

v.

**PHARMTECH RESEARCH,**
**INC., Defendant.**

Civ. A. No. 83–2247.

United States District Court,
District of Columbia.

Nov. 30, 1983.

Melvin Orlans, Leslie Rice Melman, Andrew Burton Sacks, Reid Brian Horwitz, Div. of Advertising Practices, F.T.C., Washington, D.C., for plaintiff.

Charles Lister, Covington & Burling, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

In this proceeding, the Federal Trade Commission ("FTC" or "Commission") challenges certain advertisements disseminated by the defendant Pharmtech Research, Inc. ("Pharmtech"). The advertisements are challenged on the grounds that they are false, misleading and deceptive within the meaning of sections 5(a) and 12 of the

Federal Trade Commission Act ("Act"). 15 U.S.C. §§ 45(a), 52. As provided by the statute, the FTC filed an administrative complaint in July 1983 against the defendant. The FTC now seeks an injunction under sections 13(a) and (b) of the Act, restraining Pharmtech from disseminating the challenged advertisements, pending the outcome of the administrative proceedings before the Commission. 15 U.S.C. § 53(a), (b). Pharmtech does not challenge the appropriateness of venue in the District of Columbia or the jurisdiction of this Court.

The Court has considered the legal memoranda, affidavits, and oral argument of counsel and concludes that the FTC's application for a preliminary injunction should be granted. The reasons for that determination are set out in this Memorandum.

## FACTUAL BACKGROUND

Pharmtech, a California corporation, manufactures Daily Greens, a dietary or food supplement in tablet form.[1] The label affixed to the Daily Greens bottle indicates that the tablets contain vitamins A, C, and E, the mineral selenium, beta-carotene and dehydrated vegetables. Each tablet provides 3 calories and, taken daily, is at most equivalent to 4.2 servings of fresh cabbage per month. Thus, each tablet provides approximately a one-seventh serving of cabbage. Plaintiff's Motion for a Preliminary Injunction ("FTC Motion"), Ex. 26, Report of William Vaughan.[2]

1. Pharmtech attaches great significance to its description of Daily Greens as a "food supplement" rather than a "dietary supplement." This distinction is not particularly relevant, and, in any event, is invalid because of an FDA regulatory letter indicating that an appropriate descriptive label for Daily Greens would include the term "Dietary Supplement of Vitamins A, C and E." Regulatory letter from FDA to Joseph H. Linwick, President of Pharmtech (July 25, 1983), Plaintiff's Motion for a Preliminary Injunction, Snyder Affidavit (August 2, 1983) (FTC), Attachment 1.

2. Unless otherwise indicated, the exhibits referred to in this Memorandum are attached to Plaintiff's Motion for a Preliminary Injunction. A letter sent from a representative of the Good Housekeeping magazine to an account executive

Since March 1983 Pharmtech has placed advertisements for Daily Greens in various magazines and newspapers, and has disseminated similar television advertising since July 1983. A typical print advertisement states:

Cabbage, Brussels Sprouts, Carrots, Cauliflower, Spinach and Broccoli vs. Cancer....

According to the National Academy of Sciences, a regular diet of cruciferous (cabbage, brussels sprouts, broccoli, cauliflower) and carotene-rich (carrots and spinach) vegetables is associated with a reduction in the incidence of certain cancers.*

Of course you may not really like these vegetables. Or you may not cook them quite right. And even if you have all that worked out, you still have to contend with seasonal availability. That's why there are Daily Greens.

Daily Greens are concentrated servings of cruciferous and carotene-rich vegetables. Picked ripe. Carefully washed. And quickly dehydrated without cooking. Then they're fortified with vitamins A, C, E, betacarotene and selenium.... The National Academy of Sciences thinks a balanced diet may reduce your risk of cancer. Daily Greens were designed to be a part of that balanced diet .... [S]ubstantial evidence exists that regular consumption of cruciferous vegetables is associated with a reduction in the incidence of certain cancers. Thanks to the

at Doyle, Dane and Bernbach, Inc., confirms that Daily Greens also contain miniscule amounts of carrots and spinach. Reply Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction ("FTC Reply"), Attachment 4. Doyle, Dane and Bernbach was retained by Pharmtech to prepare advertising materials, see Memorandum of Points and Authorities of Defendant in Opposition to Motion for Preliminary Injunction ("Defendant's Opposition"), Ex. B, but the company apparently discontinued representing Pharmtech because of its dissatisfaction with Pharmtech's substantiation of its claims for Daily Greens. See Ex. 46. Daily Greens failed to gain advertising clearance from Good Housekeeping and was rejected by the magazine for its seal of approval.

process of dehydration, Daily Greens allow you to eat cruciferous vegetables regularly, with the convenience of a food supplement....

* *Diet, Nutrition and Cancer*[,] Committee on Diet, Nutrition and Cancer[,] National Academy Press, 1982 ....

Exs. 1–4.

The photoboard of the television advertisements for Daily Greens states that:

The following message concerns a revolutionary new concept in diet and nutrition. According to this report, commissioned by the National Cancer Institute, a combination of chrysipherous, [sic] and carotene rich vegetables, have been proven to help our bodies build certain important biological defenses. Of course, to get the most benefit from any vegetable, you should eat them raw. But that's difficult to do everyday. So I'd like to introduce you to Daily Greens. Daily Greens are not just another vitamin pill. They're natural, fresh, chrysipherous [sic] and carotene rich vegetables, dehydrated and compressed, to give you the important nutritional supplements, that could be so vital to your future health .... So, if you're not getting enough raw vegetables, everyday, rely on Daily Greens ... To help your body defend itself.

Radio T.V. Reports, FTC Reply, Attachment 1.

Although the challenged advertisements differ in minor respects, each makes the claim that the consumption of Daily Greens is associated with a reduction in the risk of certain cancers. The claim is also made that Daily Greens will contribute to certain biological defenses. The advertisements do not state that the use of Daily Greens will prevent cancer, nor does the FTC allege that Pharmtech makes this claim.

In making these claims, defendant relies solely on a report published by the National Academy of Sciences, entitled Diet, Nutrition and Cancer. Ex. 36. That publication ("the Report") presents the results of a comprehensive study conducted by a 13-member committee of the National Research Council, the Committee on Diet, Nutrition and Cancer ("Committee") on the relationship between eating habits and cancer. The Committee concluded that frequent consumption of certain fruits and vegetables is associated with a reduction in the incidence of cancer in human beings, and found that carotene-rich vegetables, such as carrots, and cruciferous vegetables, such as broccoli, cabbage and brussels sprouts, provide this benefit. Ex. 36 at 1–15, 15–9. Thus, it recommended that people consume carotene-rich and cruciferous vegetables daily. Ex. 36 at 1–15.

The Report, however, limited the application of its findings by several specific and cautionary warnings. First, the Committee stated that scientists have not identified the specific compounds responsible for the reduced incidence of cancer, Ex. 36 at 1–3, 15–1, 15–9, and in fact, this benefit may be completely unrelated to the chemical composition of the vegetables studied. Instead, the benefit may be due to the fact that people who eat vegetables eat fewer foods that cause cancer. Ex. 36 at A–12.

Second, the Report also warned that: *[t]hese recommendations apply only to foods as sources of nutrients—not to dietary supplements of individual nutrients.* The vast literature examined in this report focuses on the relationship between the consumption of foods and the incidence of cancer in human populations. In contrast, there is very little information on the effects of various levels of individual nutrients on the risk of cancer in humans. Therefore, the committee is unable to predict the health effects of high and potentially toxic doses of isolated nutrients consumed in the form of supplements.

Ex. 36 at 1–15 (emphasis added). It further elaborated on the potential hazards of supplementation with vitamin A and selenium, Ex. 36 at 1–9 through 1–10, 9–7, and drew no firm conclusions about the effect of vitamin E and selenium on cancer in human beings. Ex. 36 at 1–8, 9–12, 10–7. These warnings are relevant because they emphasize that the findings apply to foods

as people typically consume them, not to dietary supplements.[3]

Lastly, the Report relied on studies of the consumption of raw or whole vegetables. Ex. 36 at 15–1 through 15–2. The Report cautioned that the removal of water which occurs during dehydration may alter the protective effect of nutrients and other compounds. The Committee admonished that dehydrated foods are "processed" foods which "produce significant structural and possibly major chemical changes including nutrient loss." Ex. 36 at A–5 n. 1.

## LEGAL ANALYSIS

### 1. The Standard for Injunctive Relief

The Court has the authority to issue a preliminary injunction under sections 13(a) and 13(b) of the Act. 15 U.S.C. § 53(a), (b). Section 13(a) authorizes the issuance of a preliminary injunction upon a proper showing that false advertising has been disseminated and that the public interest would be served by such an injunction.[4] While section 13(b) similarly provides for the issuance of a preliminary injunction, the reach of 13(b) is broader than 13(a). An injunction may be issued under section 13(b) for the violation of any provision of

law enforced by the FTC, including both false advertisements and misleading and deceptive advertisements.[5]

Congressional approval of these two sections governing injunctive relief has resulted in some uncertainty as to the applicable standards in false and deceptive advertising cases. The Seventh Circuit has firmly held that a proper showing under section 13(a), as distinct from 13(b), requires only that the FTC have "reasonable cause" to believe that the defendants were engaged in the dissemination of false advertisements. *See FTC v. National Commission on Egg Nutrition*, 517 F.2d 485, 488–89 (7th Cir.1975) (following *FTC v. Rhodes Pharmacal Co.*, 191 F.2d 744, 747–48 (7th Cir.1951)), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). The Ninth Circuit, in contrast, has held that the standards for a preliminary injunction under sections 13(a) and 13(b) are identical. *See FTC v. Simeon Management Corp.*, 532 F.2d 708, 712–14 (9th Cir.1976). The United States Court of Appeals for the District of Columbia has not as yet decided whether the FTC's burden differs under the two sections. In this case, the issue need not be resolved for the reason that the evidence establishes that the Commis-

---

3. A press release issued by the National Research Council on June 16, 1982, summarized the findings of the Report concerning the possible dangers of toxicity and the protective benefits of whole foods rather than nutrient supplements. The press release stated:

> Scientists are still not sure, said the [C]ommittee, whether it is the vitamins themselves, the carotenes, or other nonnutritive compounds occurring naturally in certain vegetables and fruits that help protect against cancer in humans. For this reason and because nutrients such as vitamin A and the mineral selenium can be toxic in concentrations higher than needed for optimum nutrition, the committee recommended that people eat citrus fruits, carotene-rich (dark green and deep yellow) and cruciferous vegetables daily, rather than take high-dose nutrient supplements.

FTC Motion, Grobstein Affidavit (July 22, 1983) (Committee), Attachment 1 at 3.

4. Section 13(a) provides in relevant part that:
(a) Whenever the Commission has reason to believe—
(1) that any ... corporation is engaged in, or is about to engage in, the dissemination ... of

any advertisement in violation of [section 12], and
(2) that the enjoining thereof ... would be to the interest of the public, the Commission ... may bring suit in a district court of the United States ... to enjoin the dissemination or the causing of the dissemination of such advertisement....

5. Section 13(b) provides in relevant part that:
(b) Whenever the Commission has reason to believe—
(1) that any ... corporation is violating, or is about to violate, any provision of law enforced by the ... Commission, and
(2) that the enjoining thereof ... would be in the interest of the public—
the Commission ... may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, ... a preliminary injunction may be granted without bond....

sion has met the arguably stricter standard set forth in section 13(b).

In addition to its broader reach, section 13(b) more specifically sets forth the standards governing the issuance of a preliminary injunction. A preliminary injunction under this section is proper if, after "weighing the equities and considering the Commission's likelihood of ultimate success [the Court determines that] such action would be in the public interest." 15 U.S.C. § 53(b). The test employs a "public interest" standard for injunctive relief, rather than the more traditional equity standard. *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1081 (D.C.Cir.1981). As the Conference Report noted:

> The intent [of § 13(b)] is to maintain the statutory or "public interest" standard which is now applicable, and *not* to impose the traditional "equity" standard of irreparable damage, probability of success on the merits, and that the balance of equities favors the petitioner. This latter standard derives from common law and is appropriate for litigation between private parties. It is not, however, appropriate for the implementation of a Federal statute by an independent regulatory agency where the standards of the public interest measure the propriety and the need for injunctive relief.

*Weyerhaeuser Co.*, 665 F.2d at 1081 (quoting H.R.Rep. No. 624, 93d Cong., 1st Sess. 18, 31, *reprinted in* 1973 U.S.Code Cong. & Ad.News 2417, 2533 (emphasis in original)).

■ This public interest standard does not require the FTC to demonstrate irreparable harm or to show that the public interest will be served by provisional relief. *Weyerhaeuser*, 665 F.2d at 1082. The FTC must, however, make a showing of likelihood of ultimate success on the merits and the court must weigh both public and private equities. *Id.* In *FTC v. Beatrice*

*Foods Co.*, 587 F.2d 1225, 1229 (D.C.Cir. 1978) (denial of reh'g *en banc*) (citing *FTC v. Lancaster Colony Corp.*, 434 F.Supp. 1088, 1090–91 (S.D.N.Y.1977)), the Court held that the Commission establishes a "likelihood of ultimate success" if it shows "preliminarily, by affidavits or other proof, that it has a fair and tenable chance of ultimate success on the merits ... [A] preliminary injunction should issue if the FTC has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance and ultimately by the Court of Appeals." [6] The *Weyerhaeuser* court's failure to refer to this earlier definition might suggest that the District of Columbia Court of Appeals has recently approved a more literal interpretation of the phrase "likelihood of ultimate success." Here, however, the Commission has clearly met the even arguably stricter standards set forth in *Weyerhaeuser*.

In the context of a merger proceeding, private equities include the expected gain to the shareholders and the company from a proposed merger, while public equities include beneficial economic effects and procompetitive advantages for consumers. *Id.* at 1082–83. Moreover, a defendant's private equities, without more, do not outweigh an FTC showing of likelihood of success on the merits. *Weyerhaeuser*, 665 F.2d at 1082.[7] Thus, the question is whether the FTC is likely to succeed in its claim that Pharmtech has violated either section 5 or section 12 of the FTC Act. 15 U.S.C. §§ 45, 52.

### 2. Likelihood Of Ultimate Success

#### a. False Advertisements

Section 12 prohibits false advertising which is disseminated for the purpose of

---

**6.** While this language appears in the appendix to the joint statement of Judges McKinnon and Robb, it actually quotes an unpublished Memorandum Opinion issued by the court. *See* 580 F.2d 701 (D.C.Cir.1978).

**7.** It should be emphasized that in *Weyerhaeuser,* the Court considered private equities in the con-

text of a merger, and its holding is so limited. *Id.* at 1083. This is relevant due to the fact that in a merger case, the court may issue a hold separate order as an alternative form of less drastic interim relief. *Id.* at 1084. A false advertising case does not provide the same degree of flexibility.

inducing the purchase of food, drugs and other products, or which is likely to induce the purchase of such products.[8] An advertisement is false if it is "misleading in a material respect." 15 U.S.C. § 55(a)(1).[9] In order to determine whether an advertisement is misleading:

> [a court] shall [take] into account (among other things) not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations . . . .

*Id.* The statute also requires that the purchase be in commerce or have an effect on commerce. *Id.* This provision of the statute is not disputed.

Here, it is undisputed that Pharmtech's advertisements represent that the use of Daily Greens is associated with a reduction in cancer risk. Pharmtech admits that its advertisements claim that "the same risk-reduction benefits found by the [Report] to come from cruciferous and carotene-rich vegetables comes from Daily Greens." Defendant's Opposition, Vaughan Affidavit (August 26, 1983) (Protein Research Associates) at ¶ 12. Thus, the relevant issue is whether the FTC has demonstrated a likelihood of ultimate success as to the falsity of this representation.

■■■■ An advertisement may be false by either misstating a fact or failing to disclose a material fact. *Simeon Management Corp.*, 532 F.2d at 714. An advertisement is false if it fails to disclose sufficient facts to counter any false assumptions created by the advertisement, *id.* at 716, including omissions of any negative

material facts. *J.B. Williams Co. v. FTC,* 381 F.2d 884, 890 (6th Cir.1967) (upheld FTC order that failure to disclose that Geritol will not affect most causes of fatigue is a violation of section 12).

Here, the FTC has demonstrated that it is likely to prevail in its claim that Pharmtech's advertisements are false within the meaning of section 12. Pharmtech's advertisements are false both because they misstate the findings of the Report and fail to disclose certain material facts. The advertisements are false in the first respect because the report does not refer to a positive correlation between the use of a dietary or food supplement such as Daily Greens and a reduction in the risk of cancer or the building of biological defenses. On the contrary, the Report expressly denies that its findings apply to the consumption of dietary supplements. Ex. 36 at 1–8 through 1–10, 1–15, 9–7, 9–12 and 10–7. The Committee also underscored the fact that its findings are so limited because scientists have not identified the compounds which are responsible for the beneficial effects of certain foods. Ex. 36 at 1–3, 15–1, 15–9, and A–12. Doubts about the similarities between whole and dehydrated foods are also expressed. Ex. 36 at A–5 n. 1.

Second, even if Pharmtech's claim that Daily Greens provide beneficial effects similar to whole vegetables is partially substantiated by the report, Pharmtech has omitted certain material facts in making these representations. For instance, Pharmtech should have revealed the Committee's substantial doubts concerning the application of its findings to processed

---

8. Section 12 provides in part:
   (a) ... It shall be unlawful for any ... corporation to disseminate, or cause to be disseminated, any false advertisement—
   
       *     *     *     *     *

   (2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, or cosmetics.
   (b) ... The dissemination or the causing to be disseminated of any false advertisement ...

shall be an unfair or deceptive act or practice ... within the meaning [of section 5]. 15 U.S.C. § 52.

9. Under § 12, false advertisements are by definition "unfair and deceptive," 15 U.S.C. § 52(b); *F.T.C. v. Simeon Management Corp.,* 532 F.2d 708, 716 (9th Cir.1976), while an advertisement could conceivably be "unfair or deceptive" without being "false." *Feil v. FTC,* 285 F.2d 879, 899 (9th Cir.1960).

foods such as Daily Greens. Pharmtech's failure to reveal these material facts, as required by 15 U.S.C. § 55, makes it highly likely that its representations are false in the second respect.

Section 12 of the Act also requires a showing that the challenged advertisement was disseminated "for the purpose of inducing" the purchase of Daily Greens, or was "likely to induce the purchase" of Daily Greens. 15 U.S.C. § 52. The FTC has shown that it can sufficiently establish this element. Pharmtech's representation that Daily Greens have certain anti-cancer effects are highly likely to induce and persuade the average consumer to purchase Daily Greens. Indeed, it is difficult to imagine that any manufacturer would sponsor an advertisement absent the purpose of influencing the purchase of its product.

Moreover, Pharmtech's claim that Daily Greens help build certain important biological defenses appears to be a thinly veiled attempt to soften the impact of a direct claim that its product possesses cancer-reducing qualities. Pharmtech itself admits that the biological defenses claim is a "more popular and less scientific" version of its cancer claims, Defendant's Opposition at 17, and the claim appears in the same sentence as the reference to a "[R]eport commissioned by the National Cancer Institute..." [10] If this claim is synonymous with the cancer claims, it is false for the same reasons that the explicit cancer claims are false.[11] If it is not, the claim must fail because the Report makes no mention of the role of a food or nutrient supplement in building biological defenses.

b. *Unfair Or Deceptive Acts and Practices*

■ Section 5 of the Act declares that unfair or deceptive acts or practices in or affecting commerce are unlawful.[12] Under section 5, the capacity of an advertisement to deceive consumers is judged by the impression conveyed by the entire advertisement, and not by the impact of isolated words and phrases. *Beneficial Corp. v. FTC,* 542 F.2d 611, 617 (3rd Cir.1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); *Murray Space Shoe Corp. v. FTC,* 304 F.2d 270, 272 (2d Cir. 1962). An advertisement may be deceptive if it has a tendency to convey a misleading impression, even if an alternative nonmisleading impression might also be conveyed. *Chrysler Corp. v. FTC,* 561 F.2d 357, 363 (D.C.Cir.1977).

■ Moreover, an advertisement's reference to a public issue as a means to induce consumer purchases is relevant to whether the advertisement is misleading or deceptive. *Standard Oil Co. of California v. FTC,* 577 F.2d 653, 659 (9th Cir.1978) (air pollution is a matter of public concern which is relevant to the lawfulness of the advertisement). This is because "the representations which bear on the characteristics of the product may take on increased importance in the mind of the public." *Id.* The advertiser's good faith or absence of intent to deceive is irrelevant. *Warner-Lambert Co. v. FTC,* 562 F.2d 749, 763 n. 70 (D.C.Cir.1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1575, 55 L.Ed.2d 800 (1978); *Chrysler Corp.,* 561 F.2d at 363 n. 5.

■ Pharmtech's representations that the Report supports a finding that Daily Greens reduces the risk of cancer are unfair and deceptive because they convey a misleading impression. Pharmtech has played on the average consumer's well-founded fear of cancer as a vehicle for the biological defenses. Thus, the injunction issued against such representations is appropriate.

10. This sentence appears in Pharmtech's television advertising photoboard. Radio T.V. Reports, FTC Reply, Attachment 1.

11. Moreover, Pharmtech has provided no evidence that any other findings of the National Academy of Sciences or the National Research Council support the use of Daily Greens to reduce the risk of cancer or help build human

12. The section provides in relevant part: "... unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1).

sale of its product,[13] *see Standard Oil Co. of California,* 577 F.2d at 659, and has used the findings of the Report to create the impression that Daily Greens will reduce the risk of cancer. Since there are no findings concerning the beneficial cancer effects of products like Daily Greens, and the Report in fact disclaims such a conclusion, Pharmtech's claims are misleading.

Many of the facts which establish that the FTC is likely to prevail in its claims that Pharmtech's representations are false also support the FTC's deceptive advertising charges. It should be noted, however, that this Court makes an independent legal finding on the likelihood of a violation of section 5. This finding does not stand or fall on the likelihood that Pharmtech has violated section 12.

The Commission has also employed a "reasonable basis" test as a means of determining whether an advertisement is unfair or deceptive. Section 5 requires a manufacturer to have a "reasonable basis" for any affirmative performance claims for a product. *Pfizer, Inc.,* 81 F.T.C. 23, 62 (1972), *cited with approval in Porter & Dietsch, Inc. v. FTC,* 605 F.2d 294, 302 n. 5 (7th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980); *Crown Central Petroleum Corp.,* 84 F.T.C. 1493, 1548 (1974), *aff'd mem.* 530 F.2d 1093 (D.C.Cir.1976). Absent such a reasonable basis, the advertisement is unfair, *Pfizer,* 81 F.T.C. at 62, and deceptive. *National Dynamics Corp.,* 82 F.T.C. 488, 550 n. 10 (1973), *aff'd in part, remanded on other grounds,* 492 F.2d 1333 (2d Cir. 1974), *cert. denied,* 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974).

The requirement of a reasonable basis for a product claim differs with the particular product at issue, and depends on the type of claim and product, the consequences of a false claim, and the degree to which consumers will rely on the claim.

*Pfizer,* 81 F.T.C. at 64. When an advertiser invokes scientific sources or data in support of health claims for its products, a "reasonable basis" requires that the claims be supported by competent scientific evidence. *Porter & Dietsch, Inc.,* 605 F.2d at 302 n. 5. In this instance, the defendant has utilized a scientific document to support the alleged health benefits of Daily Greens.

The FTC has also established that it is likely to prevail on its claims that the defendant lacks a reasonable basis for its claims that the use of Daily Greens reduces the risk of cancer. For its claims, Pharmtech relies solely on its interpretation of the Committee's findings and the studies considered by the Committee, and a single affidavit prepared by Mr. William Vaughan. Mr. Vaughan is currently the Director of Research at Protein Research Associates, the laboratory which developed Daily Greens.

Although the FTC seriously questions Mr. Vaughan's qualifications and credibility, *see* FTC Reply at 2–3, Robbins Affidavit (September 9, 1983) (National Academy of Sciences) at ¶ 1, this Court finds it unnecessary to resolve the question of his expertise. The opinion that the Committee's findings can be applied to Daily Greens is flatly contradicted by the Report itself, whose literal language is the best evidence of its conclusions. Moreover, Vaughan's conclusions are based on studies included in the Report, and do not provide additional evidence which would support the defendant's claims.[14] For these reasons, the submissions fail to establish that the Committee's findings support Pharmtech's claims, or that its claims are supported by any other scientific evidence.

### 3. Weighing the Equities

Once the FTC has established a likelihood of ultimate success on the mer-

---

**13.** Defendant argues that its advertisements are nonsensational. Defendant's Opposition at 6; Tr. of Hearing on Motion for Preliminary Injunction at 42–43. While the Court does not necessarily agree with this statement, even a nonsensational misrepresentation does not preclude liability under § 5.

**14.** Vaughan Affidavit, *supra,* at ¶¶ 5–6, 15.

its, the Court must weigh the equities in order to determine whether an injunction would be in the public interest. *Simeon Management Corp.*, 532 F.2d at 717. The public equities on one side of the equation include possible harm to consumers, cost of the product, and the availability of alternate products, balanced against such private equities as the financial harm to the manufacturer. *FTC v. Simeon Management Corp.*, 391 F.Supp. 697, 707 (N.D.Cal. 1975), *aff'd* 532 F.2d 708 (9 Cir.1976). A showing that the company will not realize an expected financial gain if a preliminary injunction is issued does not outweigh an FTC countershowing of likelihood of ultimate success. *Weyerhaeuser*, 665 F.2d at 1083 n. 26 (private gain from a transaction which the FTC has shown is likely to violate the antitrust laws does not merit weight); *FTC v. National Tea Co.*, 603 F.2d 694, 697 (8th Cir.1979); *Simeon Management Corp.*, 391 F.Supp. at 707.

In this case, the FTC has clearly demonstrated that Pharmtech's representations that the use of Daily Greens reduces the risk of cancer are false, misleading and deceptive. This deception is especially harmful because it preys on consumers' fears about a health issue which has generated public concern. *See Standard Oil Co. of California*, 577 F.2d at 659. In addition, people who use Daily Greens as a substitute for whole vegetables may more likely than not neglect to eat those vegetables. This is a very real harm in view of the Report's findings that the consumption of whole vegetables has a positive effect on the reduction of cancer in humans.

The availability of whole vegetables also indicates that consumers do not have an overriding need for Daily Greens. A consumer who desires the protective benefit of vegetables is able to purchase and consume these vegetables in a nondehydrated form. Moreover, the evidence indicates that Daily Greens are not inexpensive. A bottle of Daily Greens costs nearly $15 in the Washington, D.C. metropolitan area. Snyder Declaration, *supra*, ¶ 12.

Admittedly, the issuance of a preliminary injunction may have certain adverse financial consequences. Indeed, Pharmtech has submitted an affidavit stating that some retailers have not purchased Daily Greens because of the adverse publicity which has been generated by this litigation, and asserts that Pharmtech would incur certain costs in revising its television and print advertising.[15] Defendants' Opposition, Epstein Affidavit (August 25, 1983) (President of Pharmtech) at ¶¶ 2–4. These costs, while not insubstantial, do not in any respect outweigh the public equities to be considered.

Pharmtech also voices the concern that the prohibition of the representations at issue would raise a serious First Amendment question. While commercial speech is entitled to a degree of First Amendment protection, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the First Amendment does not prohibit government regulation of false or misleading advertising. *Warner-Lambert Co.*, 562 F.2d at 758–59; *Simeon Management Corp.*, 532 F.2d at 713; *National Commission on Egg Nutrition*, 517 F.2d at 489. Here, injunctive relief is appropriate because the Commission has demonstrated a likelihood of success in demonstrating that the advertisements violate the Act. Pharmtech, of course, is free to disseminate advertisements which are not false or misleading.

---

**15.** Although Pharmtech apparently assumes that adverse publicity would cease if this Court were to deny a preliminary injunction, this assumption is flatly contradicted by the New York Times article submitted by Pharmtech. N.Y. Times, August 3, 1983, at C4, col. 3, Defendant's Opposition, Ex. A. This article refers to the administrative complaints issued by the FDA and the FTC, not federal court litigation. The denial of an injunction in this case would not interrupt those administrative proceedings. Moreover, the Court notes in passing that other adverse publicity was generated when Pharmtech introduced Daily Greens on the market, well before the issuance of the administrative complaint or the filing of this action. *See, e.g.*, Consumer Repts, May 1983 at 243.

## CONCLUSION

The record in this proceeding clearly demonstrates that the Commission has shown a likelihood of ultimate success in establishing that Pharmtech has disseminated false, misleading, and deceptive advertisements. After weighing the equities, the Court determines that an injunction against these practices would be in the public interest. Pharmtech should be enjoined from making the challenged representations about its product Daily Greens.

An appropriate order accompanies this Memorandum Opinion.

## PRELIMINARY INJUNCTION ORDER

For the reasons set forth in the Memorandum Opinion filed on this date, it is by the Court this 30th day of November, 1983,

## ORDERED

That the plaintiff's motion for a preliminary injunction is granted. The terms of the preliminary injunction order are as follows:

1. Within 20 days from the date of this order, the defendant Pharmtech Research, Inc. or any of its officers, agents, representatives and employees, is enjoined from disseminating or causing to be disseminated in commerce, directly or indirectly through any device:

(a) any representation, directly or by implication, that findings of the National Academy of Sciences' report, *Diet, Nutrition, and Cancer,* support the use of "Daily Greens" or dietary supplements of similar formulation to provide any protective benefit in human beings, including but not limited to the following claims and representations:

(i) any representation or claim, directly or by implication, that findings of the National Academy of Sciences of the National Research Council support an association between the use of such products and a reduction in the incidence of cancer in human beings;

(ii) any representation, directly or by implication that findings of the National Academy of Sciences or the National Research Council indicate that the use

of such products may help build human biological defenses.

(b) any representation, directly or by implication, that the use of "Daily Greens" or dietary supplements of similar formulation is associated with a reduction in the incidence of cancer in human beings or with building human biological defenses unless, at least 30 days prior to the dissemination of any such representation or claim, defendant possesses and furnishes to the Federal Trade Commission ("Commission") competent and reliable scientific evidence that substantiates any such representation or claim.

2. This Order shall remain in effect until the administrative complaint issued against defendant by the Commission, Docket No. 9168, is dismissed by the Commission, or finally set aside by a court on review, or until an order of the Commission issued pursuant to the complaint has become final.

3. This Order shall apply to any promotional claims or representations for "Daily Greens" or products of similar formulation other than representations or claims made on a product label, carton, or package insert.

4. This Court shall retain jurisdiction to entertain any motion to compel compliance and for such other purposes as justice may require.